[No. B070991. Second Dist., Div. Five. June 7, 1994.]

HENRY G. MOELLER, Plaintiff and Appellant, v.
CHUN-YEN LIEN et al., Defendants and Appellants.

## COUNSEL

Burkley, Moore, Greenberg & Lyman, Walter R. Burkley and Edward J. Horowitz for Plaintiff and Appellant.

Crane & Humphries and Gary M. Crane for Defendants and Appellants.

## OPINION

**GRIGNON, J.**—Appellants Chun-Yen Lien and Fong T. Lien appeal from a judgment after a court trial quieting title to real property in favor of respondent Henry G. Moeller. Appellants were bona fide purchasers for value of certain real property at a nonjudicial foreclosure sale. The trial court granted respondent relief from forfeiture pursuant to Civil Code section 3275. It ordered the nonjudicial foreclosure sale to be set aside and quieted title in respondent on condition respondent reimburse appellants for the purchase price, their other expenses, 10 percent interest, costs and attorney fees. Appellants contend Civil Code section 3275 may not be applied against a bona fide purchaser for value at a nonjudicial foreclosure sale, the trial court abused its discretion in granting equitable relief and the reimbursement was inadequate.[1] We reverse.

### PROCEDURAL BACKGROUND

On February 1, 1991, respondent sued American Securities Company, IMCO Realty Services, Inc., Trustee's Assistance Corporation and appellants to set aside a trustee's sale of a medical office condominium located in Torrance, California, to cancel the trust deed, to quiet title and for an accounting. On February 6, 1991, respondent filed a first amended complaint against IMCO, American Securities, Sonoma Conveyancing Corporation, Trustee's Assistance and appellants asserting the following causes of action: (1) equitable action to set aside trustee's sale; (2) equitable action for cancellation of trustee's deed; (3) equitable action to quiet title; (4) action to recover damages for breach of contract (promissory estoppel); (5) action to recover damages for breach of contract (executed oral agreement); and (6) action to recover damages for negligent misrepresentation. On May 1, 1991, a second amended complaint was filed adding Wells Fargo Bank, N.A. as a defendant and alleging three additional causes of action: (7) action to recover damages for breach of duty to disclose facts; (8) action to recover damages for constructive fraud; and (9) action to recover damages for breach of covenant of good faith and fair dealing. On May 29, 1991, appellants cross-complained against respondent for rent.[2]

Trial was commenced by the court on April 6, 1992, and taken under submission on April 10, 1992. On April 13, 1992, the trial court rendered a decision. Judgment was entered in favor of respondent cancelling the trust

---

[1]Respondent appeals conditionally from the orders requiring him to pay money. Although respondent Henry G. Moeller is also an appellant by virtue of his conditional appeal, for ease of reference, we refer to Moeller as respondent in this opinion.

[2]Wells Fargo, IMCO, American Securities, Sonoma Conveyancing and Trustee's Assistance are not parties to this appeal.

deed and quieting title in respondent on condition respondent pay certain sums to appellants, Wells Fargo and IMCO by April 20, 1992. Respondent tendered the sums in a timely fashion. Appellants rejected the tender in order to preserve their right to appeal. The sums payable to Wells Fargo and IMCO were deposited with the trial court in an interest-bearing account pending the resolution of this appeal. In all other respects, judgment was entered for defendants. Appellants appealed. Respondent appealed conditionally from the orders requiring him to pay money to appellants, Wells Fargo and IMCO.

## FACTS

In November 1979, respondent obtained a loan in the amount of $81,200 from Wells Fargo secured by the medical office condominium. The remaining principal amount of $72,600 became due and payable on November 5, 1989. Respondent did not pay off the loan. He received two 90-day extensions of the loan from Wells Fargo and continued to make the monthly payments. He did not pay off the loan at the expiration of the extensions. Commencing in June 1990, Wells Fargo returned the monthly payments to respondent and began foreclosure proceedings. On July 19, 1990, notice of default and 90-day notice of foreclosure were served on respondent. Apparently, IMCO was Wells Fargo's foreclosure agent.

In August 1990, respondent applied to a branch of Wells Fargo for a loan to refinance his existing loan. Respondent did not inform the branch that his present loan was in foreclosure. The loan application was sent to the loan department of Wells Fargo on September 13, 1990. The loan application was rejected. Over the course of the next two months, respondent attempted to allay the credit concerns which had lead to the rejection of his loan application.

On November 6, 1990, a 30-day notice of sale under foreclosure was recorded scheduling a sale of the property for December 7, 1990; the notice indicated $83,827 was owing on the loan. On December 6, 1990, respondent's loan application was approved subject to a confirming appraisal. The foreclosure sale of the property was continued to January 11, 1991. On December 28, 1990, respondent was informed that he was required by federal regulations to post a $1,500 deposit for the bank appraisal. Instead of posting the appraisal deposit, which he believed was excessive, respondent obtained his own appraisal of the property. Respondent's expert appraised the property at between $350,000 and $360,000. This appraisal was submitted to Wells Fargo on January 9 or 10, 1991.

On January 10, 1991, respondent was informed that his appraisal did not comply with federal regulations and he was required to deposit $1,500 for a

bank appraisal. The foreclosure sale was continued to January 18, 1991. On January 16, 1991, respondent requested the amount necessary to pay off the loan and was informed the amount owing was $85,707.36. Respondent believed this amount was excessive. Respondent testified that he asked for the amount to be provided to him in writing; an unnamed Wells Fargo employee told respondent she would do this and told respondent not to worry about the foreclosure sale. This testimony was not credible and did not establish a legally sufficient basis for reliance. Respondent neither deposited the $1,500 appraisal sum nor paid off the loan.

On January 18, 1991, after confirming that neither amount had been received, Wells Fargo authorized the foreclosure sale to go forward. Appellants, who were speculators, bought the property at the foreclosure sale for $85,710, the amount of the debt. Appellants were the sole bidders.

Respondent learned of the sale later that same day. Respondent obtained a cashier's check for the amount of the debt and sent the check to the foreclosure agent. Apparently, respondent had available cash deposits in another bank of $500,000. The check was received by IMCO on January 21, 1991, and returned to respondent.

A trustee's deed dated January 23, 1991, was recorded on January 30, 1991. The deed contained the following language: "Beneficiary, as owner of the obligations secured by said Deed of Trust executed and delivered to TRUSTEE, a written Declaration of Default and Demand for Sale. Default under said Deed of Trust occurred as set forth in the Notice of Default and Election to Sell Under Deed of Trust which was recorded in the office of the Recorder of said county. Beneficiary made due and proper demand upon TRUSTEE to sell said property pursuant to the terms of said Deed of Trust. The posting and first publication of the Notice of Trustee's Sale of said property occur[r]ed not less than three months from the recording of the Notice of Default and Election to Sell Under Deed of Trust. TRUSTEE executed its Notice of Trustee's Sale stating that it would sell, at public auction to the highest bidder for cash, in lawful money of the United States, the real property above described, which Notice of Trustee's Sale duly fixed the time and place of said sale as therein stated. [¶] All requirements of law regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell Under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with."

## STATEMENT OF DECISION

The statement of decision included the following factual findings and legal conclusions. Wells Fargo's conduct in this matter did not constitute

negligence, bad faith, promissory estoppel or breach of a fiduciary duty. Wells Fargo forbore from foreclosure for a total of 14 months and engaged in no delinquencies or improprieties. The $1,500 appraisal fee was not excessive. The payoff amount communicated to respondent was the correct payoff amount.

Respondent's behavior evidenced a pattern of continued neglect and procrastination. Respondent treated the foreclosure in an entirely cavalier fashion. The sole cause of the foreclosure sale was respondent's own negligence.

Appellants were bona fide purchasers for value. There were no irregularities in the sale.

Respondent is entitled to equitable relief pursuant to Civil Code section 3275. The sale price at the foreclosure sale was grossly inadequate. The assessed value of the property was $210,000, and the appraised value was between $350,000 and $360,000. A smaller and less favorable unit in the same complex had been sold a year earlier for $317,500. The value of the property was four times the amount of the debt/sales price. Respondent lost 75 percent of the value of the property in the foreclosure sale. A slight unfairness occurred by reason of respondent's failure to learn that he had an absolute right under former Civil Code section 2924g, subdivision (c)(1) to a one-day continuance of the foreclosure sale in order to effectuate a payoff. If respondent had known of this right, he would have been able to stop the foreclosure sale and pay off the loan from his available bank deposits.

In order for respondent to be relieved of this forfeiture, he must make full compensation to appellants, Wells Fargo and IMCO. With respect to appellants, full compensation is equal to the purchase price of $85,710, interest at the rate of 10 percent from January 18, 1991, real estate taxes paid by appellants, attorney fees and costs of suit, all totalling $134,405. With respect to Wells Fargo, full compensation equals its attorney fees and costs, totalling $16,244. With respect to IMCO, full compensation equals its attorney fees and costs, totalling $56,451.

## Discussion

Appellants contend, "Equitable relief should not be granted to a defaulting debtor who has lost his property to a bona fide purchaser for cash at a public nonjudicial foreclosure sale." They argue the equitable relief from forfeiture provisions are applicable only as between parties to a contract and should not be applied to third party bona fide purchasers for value at a nonjudicial foreclosure sale as provided for in Civil Code section 2924 et seq.

*Statutory Framework*

■ Civil Code sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser. (4 Miller & Starr, Cal. Real Estate (2d ed. 1989) §§ 9:121, p. 388, 9:154, pp. 505, 516.)

The statutory scheme can be briefly summarized as follows. Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. (Civ. Code, § 2924; 4 Miller & Starr, *supra*, at § 9:131, p. 415.) The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. (Civ. Code, § 2924; 4 Miller & Starr, *supra*, at § 9:131, p. 416.) After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. (Civ. Code, § 2924, subd. (b); 4 Miller & Starr, *supra*, § 9:145, p. 471.) After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale. (Civ. Code, § 2924f; 4 Miller & Starr, *supra*, § 9:146, p. 472.) The trustee may postpone the sale at any time before the sale is completed. (Civ. Code, § 2924g, subd. (c)(1); 4 Miller & Starr, *supra*, § 9:148, p. 481.) If the sale is postponed, the requisite notices must be given. (Civ. Code, § 2924g, subd. (d).) The conduct of the sale, including any postponements, is governed by Civil Code section 2924g. (*Whitman* v. *Transtate Title Co.* (1985) 165 Cal.App.3d 312, 317 [211 Cal.Rptr. 582].) The property must be sold at public auction to the highest bidder. (Civ. Code, § 2924g, subd. (a); *Homestead Savings* v. *Darmiento* (1991) 230 Cal.App.3d 424, 433 [281 Cal.Rptr. 367].)

During the foreclosure process, the debtor/trustor is given several opportunities to cure the default and avoid the loss of the property. First, the trustor is entitled to a period of reinstatement to make the back payments and reinstate the terms of the loan. (*Napue* v. *Gor-Mey West, Inc.* (1985) 175 Cal.App.3d 608, 614 [220 Cal.Rptr. 799].) This period of reinstatement continues until five business days prior to the date of the sale, including any postponement. (Civ. Code, § 2924c, subds. (a)(1), (e).) In addition to the right of reinstatement, the trustor also possesses an equity of redemption, which permits the trustor to pay all sums due prior to the sale of the property at foreclosure and thus avoid the sale. (Civ. Code, §§ 2903, 2905.) Additionally, at the time of the foreclosure sale in this case, the trustor had the right

to postpone the trustee's sale for one day in order to pay off the loan. (Civ. Code, former § 2924g, subd. (c)(1); *Whitman* v. *Transtate Title Co., supra,* 165 Cal.App.3d at pp. 317-320.)[3]

As a general rule, the purchaser at a nonjudicial foreclosure sale receives title under a trustee's deed free and clear of any right, title or interest of the trustor. (4 Miller & Starr, *supra,* § 9:152, p. 502.) A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender. (*Smith* v. *Allen* (1968) 68 Cal.2d 93, 96 [65 Cal.Rptr. 153, 436 P.2d 65].) Once the trustee's sale is completed, the trustor has no further rights of redemption. (*Ballengee* v. *Sadlier* (1986) 179 Cal.App.3d 1, 5 [224 Cal.Rptr. 301].)

The purchaser at a foreclosure sale takes title by a trustee's deed. If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser. (Civ. Code, § 2924; *Homestead Savings* v. *Darmiento, supra,* 230 Cal.App.3d at p. 431.)

Since the presumption is rebuttable as to purchasers other than bona fide purchasers, the purchaser's title may in some instances be recovered by the trustor in an attack on the validity of the sale. (4 Miller & Starr, *supra,* § 9:152, pp. 502-503.) As to a bona fide purchaser, however, the presumption is conclusive. Thus, as a general rule, a trustor has no right to set aside a trustee's deed as against a bona fide purchaser for value by attacking the validity of the sale. (*Homestead Savings* v. *Darmiento, supra,* 230 Cal.App.3d at p. 436.) The conclusive presumption precludes an attack by the trustor on a trustee's sale to a bona fide purchaser even though there may have been a failure to comply with some required procedure which deprived the trustor of his right of reinstatement or redemption. (4 Miller & Starr, *supra,* § 9:141, p. 463; cf. *Homestead* v. *Darmiento, supra,* 230 Cal.App.3d at p. 436.) The conclusive presumption precludes an attack by

---

[3]Prior to its amendment in 1992, Civil Code section 2924g, subdivision (c)(1) provided in pertinent part: "There may be a postponement of the sale proceedings at any time prior to the completion of the sale thereof at the discretion of the trustee, upon instruction by the beneficiary to the trustee that the sale proceedings be postponed, or upon the written request of the trustor, provided the reason for such request is to permit the trustor to obtain cash sufficient to satisfy the obligation or bid at the sale and the written request identifies the source from which the funds are being obtained. The trustor shall be entitled to make one request for postponement under this paragraph and any postponement made at the request of the trustor shall be for a period not to exceed one business day." In 1992, the statute was amended to delete the trustor's entitlement to request a one-day postponement of the sale. (Stats. 1992, ch. 351, § 4.)

the trustor on the trustee's sale to a bona fide purchaser even where the trustee wrongfully rejected a proper tender of reinstatement by the trustor. ■ Where the trustor is precluded from suing to set aside the foreclosure sale, the trustor may recover damages from the trustee. (*Munger* v. *Moore* (1970) 11 Cal.App.3d 1, 9, 11 [89 Cal.Rptr. 323].)

As noted previously, the conclusive presumption is applicable to the sale to a bona fide purchaser after the delivery of a trustee's deed containing the required recitals. (*Napue* v. *Gor-Mey West, Inc.*, *supra*, 175 Cal.App.3d at pp. 615, 620-621.) ■ Although a nonjudicial foreclosure sale is generally complete upon acceptance of a bid by the trustee, the conclusive presumption does not apply until a trustee's deed is delivered. Thus, if there is a defect in the procedure which is discovered after the bid is accepted, but prior to delivery of the trustee's deed, the trustee may abort a sale to a bona fide purchaser, return the purchase price and restart the foreclosure process. (*Little* v. *CFS Service Corp.* (1987) 188 Cal.App.3d 1354 [233 Cal.Rptr. 923]; *Whitman* v. *Transtate Title Co.*, *supra*, 165 Cal.App.3d 312; 4 Miller & Starr, *supra*, § 9:151, pp. 499-500.)

■ Where there is no irregularity in a nonjudicial foreclosure sale and the purchaser is a bona fide purchaser for value, a great disparity between the sales price and the value of the property is not a sufficient ground for setting aside the sale. (*Lancaster Security Inv. Corp.* v. *Kessler* (1958) 159 Cal.App.2d 649, 655 [324 P.2d 634].) However, an irregularity in the nonjudicial foreclosure sale coupled with a gross inadequacy of price may be sufficient to set aside the sale, where the conclusive presumption does not come into effect because the trust deed has not yet been delivered. (*Whitman* v. *Transtate Title Co.*, *supra*, 165 Cal.App.3d at pp. 322-323.)

■ As can be seen from the foregoing description of the comprehensive statutory scheme regulating nonjudicial foreclosure sales, the purposes of the nonjudicial foreclosure sale statutes are to protect the trustor (debtor) from wrongful loss of the property and to provide a quick, inexpensive and efficient remedy for creditors of defaulting debtors. (4 Miller & Starr, *supra*, § 9:121, p. 388.) The debtor is protected by notice requirements, reinstatement and redemption periods and a right to postpone the sale. In addition to the statutory purpose of balancing the rights and interests of the creditor and debtor, the statutory scheme also evidences an intent that a properly conducted sale be a final adjudication of the rights of the creditor and debtor (*Smith* v. *Allen*, *supra*, 68 Cal.2d at p. 96; 4 Miller & Starr, *supra*, § 9:154, p. 505) and the sanctity of title of a bona fide purchaser be protected.

*The Instant Foreclosure Sale*

In this case, respondent defaulted on the Wells Fargo note when he failed to pay the balance of the note when due on November 5, 1989, and after a

six-month extension to May 5, 1990. Wells Fargo refused further monthly payments commencing June 1990. Notice of default and election to sell was duly served on July 19, 1990.

Since the loan was due and payable in full, respondent was entitled to no period of reinstatement to reinstate the terms of the loan. Respondent did, however, have an equity of redemption in the property, which permitted him to pay off the loan and avoid the foreclosure sale at any time prior to the sale. Respondent also had the right to postpone the foreclosure sale for one day in order to let him pay off the loan.

On November 6, 1990, a 30-day notice of sale of the property for December 7, 1990, was duly served and recorded. Since respondent was attempting to refinance the loan, the sale was continued to January 11, 1991, and then to January 18, 1991. The sale was held on January 18, 1991, and the property was sold to appellants, bona fide purchasers for value. Respondent never requested a postponement of the sale. A trustee's deed containing the requisite statutory recitals was delivered to appellants.

Wells Fargo was not negligent, did not act in bad faith, was not estopped from foreclosing and did not breach any fiduciary duty to respondent. Wells Fargo engaged in no delinquencies or improprieties. There were no irregularities in the foreclosure proceedings. Wells Fargo had no obligation to accept respondent's untimely tender of the amount due.

Under these circumstances, respondent could not attack the validity of the sale to appellants. First, there were no grounds for attacking the validity of the sale, as there were no irregularities in the procedure. Second, the sale was to bona fide purchasers for value and a trustee's deed containing the required statutory recitals was delivered. Thus, the sale was conclusively presumed to be valid.

The fact that the sale price was only 25 percent of the value of the property did not permit the sale to be set aside where there were no irregularities in the proceedings and the sale was to a bona fide purchaser. The fact that respondent was unaware he had a right to postpone the sale for one day was not an irregularity in the proceedings and did not permit the sale to be set aside. Even if respondent had known of his right to a one-day postponement, had exercised that right and had tendered the amount due, and the trustee had improperly rejected the tender, the sale could not have been properly set aside against a bona fide purchaser for value.

*Civil Code Section 3275*

We next consider whether Civil Code section 3275 applies to the facts of this case thereby permitting the sale to a bona fide purchaser to be set aside. We conclude that it does not.

Civil Code section 3275 provides: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. (*Homestead Savings* v. *Darmiento*, *supra*, 230 Cal.App.3d at pp. 432-433.) It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

Moreover, the language of the statute is expressly applicable only as between parties to a contract. (Cf. *Freedman* v. *The Rector* (1951) 37 Cal.2d 16, 20 [230 P.2d 629, 31 A.L.R.2d 1].) The language evidences no intent to make the statute applicable to a bona fide purchaser. Nor is there any case authority applying the statute to a bona fide purchaser. (Cf. *Beck* v. *Combs* (1959) 169 Cal.App.2d 583, 586 [337 P.2d 505]; *Harmon Enterprises, Inc.* v. *Vroman* (1959) 167 Cal.App.2d 517, 523-524 [334 P.2d 628].) The statute contains no language evidencing an intent to override the general rule protecting the sanctity of title of a bona fide purchaser. (*Gonzales* v. *Gem Properties, Inc.* (1974) 37 Cal.App.3d 1029, 1037 [112 Cal.Rptr. 884] ["If the defendants have sold the residence to a bona fide purchaser for value, it obviously was not within the court's power to order return of the property to the plaintiff."].)

In this case, the trial court attempted to do equity and place the parties back in the positions they were in prior to the sale. Respondent, however, was not entitled to equity. His delays, negligence and inattention were the sole cause of the sale to appellants. Appellants as bona fide purchasers are vested with title. Respondent has no further legal or equitable right, title or interest in the property.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for purposes of vacating its orders requiring respondent to pay various sums to various parties in order to have the property returned to him and to take any

other necessary actions consistent with this opinion. Respondent shall bear appellants' costs on appeal.

Turner, P. J., and Armstrong, J., concurred.