**In re Eun Hoi HWANG, Debtor.**

**Eun Hoi HWANG, Plaintiff,**

v.

**James STEARNS, et ux., Defendants.**

**Bankruptcy No. LA 94–37013 SB.**
**Adv. No. LA 94–04681–SB.**

United States Bankruptcy Court,
C.D. California.

Nov. 21, 1995.

Adina T. Turman, Los Angeles, CA, for debtor.

Steven B. Lever, Long Beach, CA, for defendant.

MEMORANDUM OF DECISION
ON SUMMARY JUDGMENT
MOTION

SAMUEL L. BUFFORD, Bankruptcy Judge.

## I. INTRODUCTION

Defendants James and Edna Stearns attempted to foreclose their deed of trust on property belonging to plaintiff Eun Hoi Hwang, even though she was not in default in her obligations under the note secured by the deed of trust. Only the filing of this chapter 11 bankruptcy case on the eve of foreclosure prevented a wrongful foreclosure. Ms. Hwang then brought this adversary proceeding to determine the amount owing under the loan and for damages for wrongful foreclosure. The Stearns contend that they were entitled to foreclose, notwithstanding that the mortgage payments were current, because Ms. Hwang had not paid the current property taxes.

The Court holds that the Stearns have wrongfully commenced a foreclosure action against Ms. Hwang, which violates her property rights in the property at issue. The Court further holds that Ms. Hwang's cause of action is based on property law, and she is not required to show that the Stearns intended to harm her, or even that they were negligent. As with property rights generally, she may enforce her rights against the Stearns without any showing of mens rea.

## II. FACTS

Ms. Hwang owns and operates a commercial business in San Pedro, California that is described locally as an "indoor swap meet." This is a retail business, popular among a number of ethnic groups, in which the owner of the building rents out spaces, or booths, to a number of business people, each of whom operates his or her own business in the rented booth. The lessees of the various booths often operate related businesses, such as jewelry, antiques or grocery businesses, and the lessees frequently share the same ethnic background. Ms. Hwang is a Korean national, who reads no English and speaks the language with great difficulty. In February, 1994 she had some 18 tenants at the swap meet, who were all also Korean.

On February 23, 1990 Mrs. Hwang and her late husband purchased the business and property from the Stearns. As partial payment for the property, the Hwangs gave the Stearns a promissory note for $870,000, which was secured by a second priority deed of trust (in the amount of $800,000). Payments came due on the 25th of each month.[1] A late charge accrued under the note for any payment made more than ten days after the due date.

On February 23, 1994 legal counsel for the Stearns wrote the Hwangs to complain about a January payment that had arrived late,[2] and to demand the payment of late charges, property taxes and attorneys fees. The letter gave the Hwangs ten days from February 25 to cure the alleged defaults totaling $10,622.15, and threatened foreclose proceedings if the defaults were not cured.

Notwithstanding the ten-day notice given in the letter, on the same date as the letter the Stearns prepared a notice of default, and recorded it two days later in the County Recorder's office. Mysteriously, the notice of default stated that the arrearage amounted to $17,770.88. The Stearns proceeded up to the final day of the foreclosure process, when they were stopped by the filing of this chapter 11 bankruptcy case.

It is undisputed that the mortgage payments were current when the Stearns began the foreclosure process.[3] The Stearns contend that they were entitled to proceed with

---

1. The parties apparently have assumed that the payments came due on the 23rd of each month. However, the note specifies that the payments were to begin "on the 30th day after the date of this Note," and were to be made on the same date of every month thereafter. Because February had 28 days, the thirtieth day after February 23, 1990 was March 25, 1990.

2. The Stearns contend that there were prior defaults, also. However, these defaults were cured, and play no part in the dispute before the Court.

3. This fact was disputed at the time that summary judgment motions were filed in this adversary proceeding, but the defendants later admitted the fact.

foreclosure (ignoring their extension of time) because of an alleged default in property taxes. Although the debtor disputes the tax arrearage, she has presented no evidence of the timely payment of the taxes, and the Court assumes for the purposes of this motion that the property taxes were in fact delinquent in late February, 1995.

The real damage to the debtor was caused on February 27, 1994 when the Stearns caused the posting of a notice of default on the Hwang's premises. As a result, many of the tenants stopped paying rent and moved out, and thus deprived the debtor of the rental revenue necessary to make the payments to the Stearns.

In addition, the debtor obtained a loan commitment from Seoul California Bank on February 18, 1994 for a loan of $750,000 to replace the Stearns loan. The new loan had an interest rate of prime plus 2.5%, which at that time would have totaled 11.5%. In contrast, the Stearns loan carried a 15% rate. However, the bank canceled this commitment on March 22, because of the pending foreclosure by the Stearns.

### III. ANALYSIS

#### A. California Deed of Trust Foreclosure Process

■ California real property law provides an efficient process for extra-judicial foreclosure of a deed of trust[4], which takes approximately four months from start to finish. California Civil Code §§ 2924—2924k (West 1993 & Supp.1995). This statute provides a comprehensive framework for the regulation of nonjudicial foreclosure sales. It has three purposes: (1) to provide the creditor/beneficiary with a quick, inexpensive remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted foreclosure sale is final between the parties and conclusive as to a bona fide purchaser. *Moeller v. Lien*, 25 Cal.App.4th 822, 30 Cal.Rptr.2d 777, 782 (1994). *Moeller* summarizes the statutory procedure as follows:

Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. The foreclosure process in commenced by the recording of a Notice of Default and Election to Sell by the trustee. After the Notice of Default is recorded, the trustee must wait three calendar months before proceeding with the sale. After the three-month period has elapsed, a Notice of Sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale. The trustee may postpone the sale at any time before the sale is completed. If the sale is postponed, the requisite notices must be given. The conduct of the sale, including any postponements, is governed by Civil Code section 2924g. The property must be sold at public auction to the highest bidder.

*Moeller*, 30 Cal.Rptr.2d at 782 (citations omitted). The foreclosing creditor must follow exactly the very detailed procedures: failure to do so results in an invalid foreclosure (subject to the exception stated in § 2924, and described below). *See, e.g., Miller v. Cote*, 127 Cal.App.3d 888, 179 Cal.Rptr. 753, 757 (1982).

■ During the foreclosure process, the debtor/trustor is given several opportunities to cure the default and avoid the loss of the property. First, the trustor is entitled to a period of reinstatement to make the back payments and reinstate the terms of the loan, which continues until five business days prior to the date of the sale, including any postponement. *Id.*, 30 Cal.Rptr.2d at 782–83. In addition to the right of reinstatement, the trustor also has an equity of redemption, which permits the trustor to pay all of the sums due prior to the actual sale of the property at foreclosure, and thus to avoid the sale. *Id.* Furthermore, at the time of the foreclosure sale the trustor has a right to postpone the sale for one day in order to pay off the loan. *Id.*

■ As a general rule, the purchaser at a nonjudicial foreclosure sale receives title under a trustee's deed free and clear of any

---

**4.** A deed of trust is in effect a mortgage with a power of sale. *Domarad v. Fisher & Burke, Inc.*,

270 Cal.App.2d 543, 76 Cal.Rptr. 529, 535 (1969).

right, title or interest of the trustor. *Id.* A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender. *Id.* Once the trustee's sale is complete, the trustor has no further rights of redemption. *Id.*

■ If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser. *Id.* As a general rule, a trustor has no right to set aside a trustee's deed as against a bona fide purchaser for value by attacking the validity of the sale, even though there may have been a failure to comply with some required procedure which deprived the trustor of the right of reinstatement or redemption. *Id.* However, the trustor may recover damages from the trustee if the trustee has not followed the proper procedures. *Id.*

■ In exchange for utilizing this highly efficient foreclosure procedure for deeds of trust, the foreclosing creditor must give up any right to claim a deficiency. California Civil Procedure Code § 580d (West 1982); *Passanisi v. Merit–McBride Realtors, Inc.,* 190 Cal.App.3d 1496, 236 Cal.Rptr. 59, 63 (1987).

B.  Property Tax Default

■ The Stearns contend that delinquent property taxes entitled them to foreclose, even though the Hwangs were current on their mortgage payments. For this position they rely on California Civil Code § 2924c, which requires a notice of default to provide in relevant part:

> While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to ... pay taxes on the property ... the beneficiary may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all ... property taxes. ...

California Civil Code § 2924c (West Supp. 1995).

This statutory provision serves a dual purpose in California. First, it sets forth substantive rights of the parties in the foreclosure context. Second, it specifies the exact language that the foreclosing creditor must use to communicate these rights to the debtor.

■ A property tax deficiency cannot justify foreclosure by the Stearns in this case, for two reasons. First, the notice of default must specifically state the default on which a beneficiary of a deed of trust is relying in initiating foreclosure. *Anderson v. Heart Federal Savings,* 208 Cal.App.3d 202, 256 Cal.Rptr. 180, 186–87 (1989). In this case the notice of default specified only a monetary default of $17,770.88. It did not specify any tax default.

■ There are two purposes for requiring a trust deed beneficiary to specify the exact default in the notice: (1) to put the beneficiary to the task of ascertaining the existence of a breach before invoking the power of sale, and (2) to give notice to the trustor of the obligations that the beneficiary contends have been breached. *Id.,* 256 Cal. Rptr. at 187. Absent the specification of a tax default, the Stearns may not rely on the general language of § 2429c to invoke such a default as grounds for foreclosure. *Id.*

■ There is a second, even more serious reason why the Stearns may not rely on a tax default to justify foreclosure in this case. The Stearns may claim a default under the note and deed of trust only if the note or deed of trust require the debtor to pay the taxes on a current basis. Section 2924c specifies that the requirement to pay obligations such as insurance and taxes during foreclosure applies only if "required by your note and deed of trust. ..." The right to insist on such payment as a condition of curing a default is likewise tied to the existence of such an obligation in the note or deed of trust.

However, the promissory note in this case is silent on the subject of taxes, and the Stearns can point to no provision in the deed of trust that obligated the Hwangs to keep the taxes current.[5] Because in this case there was no contractual obligation to make current payments on real estate taxes, the tax default was not a default under either the note or the deed of trust. Absent such a default, the Stearns had no right to proceed with foreclosure.[6]

## C. Wrongful Foreclosure

The foregoing analysis is sufficient to dispose of this dispute. However, the parties have had difficulty determining the proper theory to support a claim for wrongful foreclosure. In consequence, the Court now addresses the nature of the legal theory involved in this adversary proceeding.

The complaint does not specify the theory on which it is based.[7] In the summary judgment motion plaintiff has claimed tort causes of action for slander of title and interference with prospective economic advantage. Defendants have moved for summary judgment based on lack of the requisite intent, and plaintiff has made a cross-motion for summary judgment. At the Court's request, the parties have also briefed the possible theory of prima facie tort. A breach of contract cause of action would be another possibility, if there were a contractual provision on point. The Court finds that neither contract nor tort theories are particularly promising, and that they are not necessary to a recovery for wrongful foreclosure.

Instead, the Court finds that the proper theory is found in property law. Plaintiff is the fee owner of the property here at issue. The Stearns also have a property interest in the property, which is the right to foreclose upon a default in the obligations owing under the promissory note and deed of trust. *See, e.g., Louisville Bank v. Radford*, 295 U.S. 555, 595–96, 55 S.Ct. 854, 865–66, 79 L.Ed. 1593 (1935) (describing the property rights of a mortgagee that were impaired by the Frazier–Lemke Act (that imposed a moratorium on farm foreclosures during the Great Depression), which rendered the act unconstitutional).

Unlike tort law rights, property rights do not turn on the intent or fault of the alleged wrongdoer. Most property rights apply with no consideration of fault. For example, a life estate terminates on the death of the owner of the estate, without an consideration of fault. Similarly, a lease for a term of years terminates when the term expires. In addition, any nonconsensual infringement on the right to possession of property, however innocent, supports a claim for trespass. *See, e.g., Cassinos v. Union Oil Co.*, 14 Cal.App.4th 1770, 18 Cal.Rptr.2d 574, 579 (1993). Similarly, a violation of the Rule Against Perpetuities defeats a grant of property contrary to the intention of the grantor. *See, e.g., Sheean v. Michel*, 6 Cal.2d 324, 327–28, 57 P.2d 127 (Ct.App.1936).

So it is with wrongful foreclosure. A mortgage or trust deed holder who forecloses in the absence of a default under the promissory note, mortgage or deed of trust commits an offense against the property rights of the mortgagor. Liability for

5. The trust deed is a short form document, which incorporates by reference a standard set of provisions in a document separately recorded with the County Recorder. This procedure is authorized by California Civil Code § 2952 (West 1993), to permit mortgage lenders to reduce the amount of paper that they must record at the office of the county recorder. The parties have not provided to the Court the provisions in the fictitious deed of trust.

6. There is a second issue that the parties have not addressed. Since the debtor does not read English at all, she may not have knowingly assented to any of the terms of the deed of trust. However, this issue has also not been raised, and the Court gives it no weight.

7. Legal labels are not required in the pleadings. Rule 8(a) of the Federal Rules of Civil Procedure, incorporated by reference (with additions not relevant here) in Rule 7008 of the Federal Rules of Bankruptcy Procedure, requires only, "A short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Commentators have uniformly interpreted this to require only "fact" pleading, and not to require a pleader to identify the legal theory on which relief is requested. *See, e.g.,* 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL CIVIL PRACTICE AND PROCEDURE § 1215 (2d ed. 1990).

wrongful foreclosure arises without consideration of the mens rea of the foreclosing party.[8]

## IV. CONCLUSION

The Court concludes that the defendants in this case have commenced a wrongful foreclosure of their deed of trust against the plaintiff's ownership interest in the property here at issue. This is a property cause of action, which gives right to a remedy without any consideration of any intent or negligence of the defendants. The property tax deficiency claimed by the defendants cannot support the foreclosure, because they have shown no provision in the note or deed of trust requiring the plaintiff to pay the property taxes on a current basis. The foreclosure proceeding must be nullified, so that it has no effect.

The plaintiff has not yet proven her damages in this case. Thus the Court sets a further hearing on November 21, 1995 at 11:00 a.m. to determine how to proceed with respect to damages in this case.

---

8. However, the intent or negligence of the mortgagee or trust deed holder may be relevant to a determination of punitive damages in a proper case. No punitive damages are sought in this case.