Filed 4/25/14  Nguyen v. Margolis CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| NGOC GIAU NGUYEN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JOEL JEREMY MARGOLIS,<br><br>    Defendant and Respondent. | H038268<br>(Santa Clara County<br>Super. Ct. No. 1-10-CV-180214) |

Plaintiff Ngoc Giau Nguyen appeals from a judgment entered after the trial court granted summary judgment in favor of her former attorney, defendant Joel Jeremy Margolis.  The trial court concluded that Nguyen's causes of action for professional negligence, breach of fiduciary duty, and unfair business practices were time-barred and that her cause of action for intentional misrepresentation lacked merit because she could not establish any of the required elements.  On appeal, Nguyen contends that triable issues of fact precluded summary judgment.  We reject her contentions and affirm the judgment.

## I.  Background

Nguyen owned a home in San Jose that she shared with her mother Mong Yen T. Tran and several renters.  In late 2008 or early 2009, Nguyen defaulted on her mortgage

payments. She sought the assistance of Margolis, who advertised in the local Vietnamese newspaper. Nguyen can speak English "with ease" but she "prefers her native language of Vietnamese." On March 25, 2009, she and Tran met for an initial intake interview with Margolis's wife and employee Tuyet.[1] Tuyet acted as a liaison between Margolis and his Vietnamese-speaking clients. Tuyet is not a lawyer.

Nguyen retained Margolis. Her "sole purpose for seeking legal assistance from [him] was for a loan modification so she may avoid a foreclosure." She paid a $3,000 retainer that Margolis agreed to refund if her lender refused to modify her loan.

Nguyen signed a form that authorized Margolis and his agents to act on her behalf "regarding negotiation and/or modification of any and all loans" on her home. The authorization stated that it would "remain in effect until its purpose is fulfilled." Margolis faxed the authorization to Nguyen's lender. He had earlier informed the lender that his firm represented Nguyen "for the purpose of arranging a modification of the above-referenced loan."

Margolis instructed his associate to prepare a loan modification application. Nguyen signed the paperwork "sometime around late March" 2009. The application was faxed to Nguyen's lender on April 18, 2009.

In mid-April 2009, Nguyen received a notice of trustee sale. She alleged that she "rushed" to the Margolis firm's office where Tuyet said "'it would be taken care of.'" Several days later, Nguyen received bank letters advising her to contact a lawyer to avoid foreclosure. She alleged that she took them to Tuyet and that Tuyet told her "'to not worry.'" In early May 2009, a notice posted on Nguyen's front door advised her to contact A to B Realty because the property was bank-owned and eviction proceedings were about to commence. Tuyet assured Nguyen that she would "'take care of it.'"

---

[1] Because Margolis and his wife share a surname, we refer to Tuyet by her given name, not out of disrespect but for convenience and clarity.

On May 13, 2009, Tuyet told Nguyen and Tran that the lender had rejected the loan modification. Nguyen and Tran spoke to Margolis that day for the first and only time. He told them through Tuyet, " 'Sorry, we failed.' "

In late June 2009, Nguyen was served with a summons and complaint for unlawful detainer. She alleged that she took the summons to the Margolis firm and that Tuyet told her she would arrange for "an Oakland lawyer" to represent her at the unlawful detainer hearing. A few days later, Tuyet told Tran that a lawyer could not be found to represent Nguyen at the hearing. Nguyen alleged that Tuyet "advised the Court Order meant [that Tran and Nguyen] would have to move out of the home and then [Tuyet] would purchase the home and allow [Nguyen and Tran] to rent it." In mid-July 2009, the Sheriff's Office posted a notice to vacate on Nguyen's door. She and Tran moved out.

Tran continued to visit the Margolis firm after July 2009. She "waited hours" to see Tuyet but never saw or spoke to her. Tran and Nguyen also telephoned the firm "on many occasions" but their calls were not returned. In August 2009, the bank sold the house at a foreclosure sale. On September 1, 2009, Nguyen left a handwritten note in Vietnamese at the Margolis firm's office. The note stated that she wanted to "pick up all my documents if any." Tuyet refunded Nguyen's $3,000 retainer in December 2009.

Nguyen filed suit against Margolis on August 18, 2010. Her cause of action for professional negligence alleged that Margolis "held himself out to be a licensed attorney who would assist [her] to obtain a loan modification or at the very least forestall foreclosure." Margolis breached his duty "by his failure to do anything about the loan modification or pending foreclosure," by failing to communicate with her, and "by allowing a non-attorney to render legal advice . . . ." Nguyen's cause of action for breach of fiduciary duty alleged that Margolis "failed to use reasonable care when he took the retainer [and] obtained a signed fee agreement specific to the task and then failed to provide any legal service whatsoever." Her cause of action for unfair business practices alleged that "[i]nstead of providing legal services to Plaintiff," Margolis "allowed a non-

3

lawyer to render legal advice and assistance . . . ." Nguyen's cause of action for intentional misrepresentation alleged that she "reasonably believed [Margolis] would assist in the avoidance of foreclosure . . . ." He "intentionally misrepresented he would provide this service because he never asked for information about the lender . . . , never performed any legal service whatsoever and completely failed to communicate with his client." As a result of these breaches of duty, Nguyen's home was foreclosed upon. She lost her home, any future equity, her down payment on the home, rental income, and her use and enjoyment of the property. She was forced to pay moving expenses and attorney's fees and suffered embarrassment, anxiety, and emotional distress.

In September 2011, Margolis moved for summary judgment or, in the alternative, summary adjudication. He contended that Nguyen's causes of action for professional negligence, breach of fiduciary duty, and unfair business practices were time-barred because she suffered actual injury and knew of his alleged wrongful conduct no later than May 2009, when the trustee foreclosed on the property. (Code Civ. Proc., § 340.6.) Margolis argued that Nguyen's admissions precluded her from establishing any basis for tolling the statute of limitations. He contended that Nguyen's cause of action for intentional misrepresentation had no merit because she could not establish the necessary elements. The trial court agreed and granted the motion. The court entered judgment in favor of Margolis. Nguyen filed a timely notice of appeal.


## II.  Discussion

### A.  Standard of Review

" ' "Appellate review of a ruling on a summary judgment or summary adjudication motion is de novo." ' " (*Food Pro Internat., Inc. v. Farmers Ins. Exchange* (2008) 169 Cal.App.4th 976, 993.)  "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850

4

(*Aguilar*).) The moving party "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid*.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar*, at p. 851.)

"[A] 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' [Citation.]" (*Aguilar*, *supra*, 25 Cal.4th at p. 849.)

## B. Causes of Action for Professional Negligence, Breach of Fiduciary Duty, and Unfair Business Practices

Nguyen contends that the trial court erred in finding her causes of action for professional negligence, breach of fiduciary duty, and unfair business practices time-barred. We disagree.

"The applicable statute of limitations for legal malpractice claims is [Code of Civil Procedure] section 340.6."[2] (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 110 (*Glasser*).) Section 340.6 provides in pertinent part that "[a]n action against an attorney

---

[2]     Subsequent statutory references are to the Code of Civil Procedure unless otherwise noted.

for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . . [I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:  [¶] . . . [¶]  (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." (§ 340.6, subd. (a)(2).)

Here, Margolis had the initial burden of establishing that Nguyen filed her complaint more than a year after she discovered or should have discovered the facts constituting his alleged wrongful conduct.  (§§ 340.6, subd. (a)(2), 437c, subd. (p)(1).) After independently reviewing the evidence, we conclude that he satisfied that burden.

Nguyen's causes of action for professional negligence, breach of fiduciary duty, and unfair business practices were each premised on the same alleged facts, specifically, that Margolis's "fail[ed] to do anything about the loan modification or pending foreclosure," "fail[ed] to communicate with his client," and "allow[ed] a non-attorney to render legal advice to [Nguyen]."

Margolis presented evidence that Nguyen was aware of the facts underlying her allegation that he "fail[ed] to do anything about the loan modification or pending foreclosure" by May 2009.  That evidence included verified interrogatory responses in which Nguyen acknowledged that she "complet[ed] one application at [his] office for loan modification purposes" and "signed the modification paperwork sometime around late March [2009]."  Margolis declared that he submitted the completed application to Nguyen's lender in April 2009.  He attached copies of the paperwork to his declaration. He also presented interrogatory responses in which Nguyen admitted that Margolis and Tuyet informed her of the lender's refusal to modify the loan on May 13, 2009.  He

6

presented additional interrogatory responses in which Nguyen admitted that she knew in May 2009 that her house had been foreclosed upon. Margolis thus made a prima facie showing that Nguyen knew by May 2009 that he had tried but failed to obtain a loan modification for her and that her house had been foreclosed upon.

Margolis also presented evidence that Nguyen was aware by May 2009 of the facts underlying her allegation that he failed to communicate with her. That evidence included his declaration that Tuyet acted as a liaison between him and his Vietnamese-speaking clients and Nguyen's interrogatory response that she spoke English "with ease" but "prefer[red] her native language of Vietnamese." Margolis presented additional interrogatory responses in which Nguyen acknowledged various meetings with Tuyet, admitted that she completed a loan modification application at the Margolis firm and signed it several weeks later, and conceded that Tuyet and Margolis both informed her on May 13, 2009 that the lender had declined to modify her loan. Margolis thus made a prima facie showing that by May 2009, Nguyen knew the extent of her communication (or lack of communication) with him.

Finally, Margolis presented evidence that Nguyen was aware of the facts underlying her unfair business practices cause of action before July 2009. That evidence included his declaration that he employed Tuyet, that she often acted as a liaison between him and his Vietnamese-speaking clients, that he had instructed her not to offer any legal advice, and that he did not fail to supervise her. Margolis also presented an interrogatory response in which Nguyen impliedly acknowledged that she knew Tuyet was not a lawyer. The response stated that Nguyen believed Tuyet "was (and is currently) an employee, secretary, assistant to [Margolis] working side by side with Defendant's law practice catering to the Vietnamese community." Margolis also presented Nguyen's supplemental response to an interrogatory that asked her to identify the facts on which she based her contention that he allowed Tuyet to render legal advice. Nguyen's response established that June 28, 2009 was the last time Tuyet allegedly dispensed legal

advice to her. Margolis thus made a prima facie showing that Nguyen was aware of the facts underlying her unfair business practices cause of action by the time she was evicted in July 2009.

Margolis presented evidence that Nguyen did not file suit until August 18, 2010, more than a year after she was aware of the facts underlying her causes of action for professional negligence, breach of fiduciary duty, and unfair business practices. His prima facie showing that these causes of action were barred by the one-year statute of limitations set forth in section 340.6 shifted the burden to Nguyen to raise a triable issue of material fact. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

Nguyen did not dispute that she filed suit more than a year after she learned the facts constituting her causes of action. Instead, she contended that the statute of limitations was tolled "because [she] was still working with the Margolis law firm for months beyond the asserted deadline." She makes the same contention here. We cannot agree.

" 'The continuous relationship tolling provision applies only so long as representation continues "*regarding the specific subject matter in which the alleged wrongful act or omission occurred.*" ' [Citation.]" (*Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1062 (*Lockton*).) " 'The test for whether the attorney has continued to represent a client on the same specific subject matter is objective, and ordinarily the representation is on the same specific subject matter until the agreed tasks have been completed or events inherent in the representation have occurred.' [Citation.]" (*Lockton*, at p. 1063.) Where the attorney unilaterally withdraws or abandons the client, "the representation ends when the client actually has or reasonably should have no expectation that the attorney will provide further legal services." (*Gonzalez v. Kalu* (2006) 140 Cal.App.4th 21, 30 (*Gonzalez*).) "That may occur upon the attorney's express notification to the client . . . , or, if the attorney remains silent, may be inferred from the circumstances." (*Id.* at pp. 30-31.) "After a client has no reasonable expectation that the

8

attorney will provide further legal services . . . the client is no longer hindered by a potential disruption of the attorney-client relationship and no longer relies on the attorney's continuing representation, so the tolling should end." (*Gonzalez*, at p. 28.)

Application of these principles here compels the conclusion that Margolis's representation of Nguyen ended more than a year before she filed suit. Nguyen conceded that her "sole purpose for seeking legal assistance from [Margolis] was for a loan modification so she may avoid a foreclosure." Representation on that "specific subject matter" necessarily concluded in May 2009 because the purpose of the representation could no longer be achieved after the loan modification was rejected and the house foreclosed upon. (*Lockton*, *supra*, 184 Cal.App.4th at p. 1062.) Nguyen could have "no reasonable expectation that [Margolis] would provide further legal services" after that. (*Gonzalez*, *supra*, 140 Cal.App.4th at p. 31.)

We reject Nguyen's suggestion that Tuyet's alleged assurances that the notice of trustee sale "would be taken care of," that Nguyen should not worry about the bank letters, and that Tuyet would "take care of" the May 7, 2009 notice posted on Nguyen's door continued the representation. According to Nguyen's complaint, those reassurances were made before the modification was refused and the house foreclosed upon. Nguyen learned on May 13, 2009, that her lender had rejected the application. Given that her "sole purpose for seeking legal assistance from Margolis was for a loan modification so she may avoid a foreclosure," Nguyen could have "no reasonable expectation that [he] would provide further legal services" after that. (*Gonzalez*, *supra*, 140 Cal.App.4th at p. 31.) The purpose of the representation was no longer achievable after that date.

We reject Nguyen's suggestion that the representation was continued by Tuyet's alleged promise on May 13, 2009 to purchase the house from the bank and rent it back to Nguyen. The purpose of the representation as Nguyen herself consistently defined it did not include purchasing her foreclosed-upon house and renting it back to her. She retained Margolis to help her obtain "a loan modification so she may avoid a foreclosure." She

9

could have no reasonable expectation that Margolis would provide further legal services after the loan modification effort failed.  (*Gonzalez*, *supra*, 140 Cal.App.4th at p. 28.)

Even if Nguyen subjectively believed that Tuyet's alleged promises continued the representation, "[c]ontinuity of representation ultimately depends, not on the client's subjective beliefs, but rather on evidence of an ongoing *mutual* relationship and of activities in furtherance of the relationship."  (*Worthington v. Rusconi* (1994) 29 Cal.App.4th 1488, 1498 (*Worthington*).)  Nguyen's admissions established the opposite.  She provided an unequivocal "No" response to a contention interrogatory that asked if she contended that Margolis performed "any legal services" for her after the notice to vacate was posted in July 2009.  She acknowledged that Margolis declined to represent her in the unlawful detainer proceeding and that he advised her instead to retain a different lawyer.  She admitted that the Margolis firm did not return any of her or Tran's phone calls after July 2009.  She and Tran both admitted that although Tran continued to visit the firm's office and "waited hours" to see Tuyet after July 2009, she never saw or spoke to her.  Nguyen's admissions established that there was no evidence of "an ongoing *mutual* relationship" or of "activities in furtherance of the relationship" after she and Tran moved out of the house in July 2009.  (*Worthington*, at p. 1498.)

To the extent Nguyen contends that Margolis's failure to promptly return her $3,000 retainer continued the representation until December 2009, we disagree.  Nguyen cites no authority to support her position, and we have found none.

*Gurkewitz v. Haberman* (1982) 137 Cal.App.3d 328 (*Gurkewitz*) undermines Nguyen's position.  In *Gurkewitz*, the court addressed "when an attorney ceases to represent a client, absent a withdrawal or change of attorneys."  (*Id*. at p. 333.)  The court held (as a matter of first impression in California) that "so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative."  (*Ibid*.)  The court explained that "after the appeal became final, the costs on appeal were still in controversy."  (*Ibid*.)  "[Plaintiffs'] attorney

10

negotiated with opposing counsel and in fact did effect a reduction in the bill for his client.  That contact with opposing counsel amounted to representation." (*Gurkewitz*, at p. 334.)  The statute of limitations on the plaintiffs' malpractice action against the attorneys was therefore tolled.  (*Ibid.*)

The court emphasized that it "did not mean to suggest that any contact between an attorney and his client amounts to representation." (*Gurkewitz*, *supra*, 137 Cal.App.3d at p. 334.)  The court noted that "[h]ad [plaintiffs' attorney] merely forwarded the bill from Security Pacific Title Insurance [for costs on appeal], that act would not have constituted representation." (*Ibid.*)  In our view, the return of Nguyen's $3,000 retainer is analogous to "merely forward[ing] the bill from Security Pacific Title Insurance" to the plaintiffs in *Gurkewitz*. (*Ibid*.)  Here, Nguyen conceded that Margolis did not perform any legal services for her after July 2009.  The belated return of her $3,000 retainer cannot be interpreted to mean that the representation continued until December 2009.

In sum, Nguyen's admissions contradicted her assertion that Margolis continued to represent her after her loan modification was rejected and her house foreclosed upon. Those admissions established that the representation ended no later than July 2009.  She did not file suit until August 2010.  Because she failed to raise a triable issue of material fact about whether the statute of limitations was tolled, the trial court properly granted summary judgment in favor of Margolis on her causes of action for professional negligence, breach of fiduciary duty, and unfair business practices.

### C.  Cause of Action for Intentional Misrepresentation

Nguyen contends that the trial court erred in determining that she did not establish the necessary elements of a cause of action for international misrepresentation.  We disagree.

The elements of intentional misrepresentation are "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the

misrepresentation, (4) justifiable reliance, and (5) resulting damage." (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255.)

Nguyen did not establish a misrepresentation here. Her complaint alleged that Margolis "had [her] sign a legal fee agreement, which specified representation was 'ONLY for the properties located at 2507 Story Road, San Jose, CA 95122 to prepare a Forensic Loan Audit and research on the Trustee Sale Procedure.'" She relied on that allegation below. She does not rely on it here. Nor could she. There is no evidence in the record to support her allegation that Margolis promised to prepare a forensic loan audit and to research the trustee sale procedure. Nguyen did not provide a copy of the legal fee agreement (which she later characterized as a client payment receipt "which she believed to be a fee agreement"). Nor did she mention either task in the declaration she submitted in opposition to the summary judgment motion. "'The plaintiff . . . may not rely upon the mere allegations or denials' of [her] 'pleadings to show that a triable issue of material fact exists . . . .'" (*Aguilar*, *supra*, 25 Cal.4th at p. 849.) The trial court properly concluded that Nguyen could not base her misrepresentation cause of action on her unsupported allegations that Margolis promised to prepare a forensic loan audit and research to the trustee sale procedure.

Nguyen's complaint also alleged that Margolis "never asked for information about the lender from [Nguyen], never performed any legal service whatsoever and completely failed to communicate with his client." Her own admissions contradicted these allegations. She admitted that he performed legal services on her behalf by preparing the loan modification application. She failed to present any evidence contradicting Margolis's sworn declaration that he submitted the completed application to her lender. She admitted that Margolis communicated with her through Tuyet and personally. The trial court properly concluded that her cause of action for intentional misrepresentation lacked merit "as [Nguyen] cannot establish that [Margolis] failed to perform legal services on her behalf and/or that he failed to communicate with her."

12

Nguyen argues that the trial court "ignore[d] the numerous assurances and promises of legal services, conveyed by Tuyet, that [Margolis] either did not or could not fulfill." The trial court's order refutes that contention by referencing the very allegations that Nguyen insists the court ignored. In granting summary judgment in favor of Margolis, the trial court implicitly concluded that to the extent Tuyet's expressions of reassurance could be deemed representations, Margolis followed through on those representations by preparing, submitting, and following up on the loan modification application that Nguyen retained him to prepare.

To the extent Nguyen asserts that Tuyet's expressions of reassurance that the notice of trustee sale "would be taken care of" or that Nguyen should not worry about the bank letters constituted representations guaranteeing a successful result, we disagree. (See *Rochlis v. Walt Disney Co*. (1993) 19 Cal.App.4th 201, 213-214, 216 [rejecting executive's contention that promises of "appropriate" financial rewards were not honored: "Promises too vague to be enforced will not support a fraud claim any more than they will one in contract"], disapproved on another ground in *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1251.) Margolis's agreement to refund the retainer if the lender rejected the application put Nguyen on notice from the outset of the representation that a successful result was not guaranteed. Nguyen appears to concede this point.

To the extent Nguyen contends that Tuyet's expressions of reassurance constituted representations that Margolis would forestall the foreclosure by preparing a bankruptcy petition, we disagree. Nguyen did not retain Margolis to prepare a bankruptcy petition. She conceded that her "sole purpose for seeking legal assistance from [him] was for a loan modification so she may avoid a foreclosure." The trial court properly concluded that Nguyen's intentional misrepresentation claim failed because there was no evidence of any misrepresentation.

13

Nguyen contends that the trial court also erred in determining that she did not establish the element of resulting damages.  We disagree.  "'Damage to be subject to a proper award must be such as follows the act complained of as a legal certainty . . . .'" (*Thompson v. Halvonik* (1995) 36 Cal.App.4th 657, 663.)  Here, the damages that Nguyen alleged flowed from her lender's refusal to modify her loan and from the foreclosure that followed.  She provided no evidence establishing a connection between any alleged misrepresentation by Margolis and the failed loan modification and ensuing foreclosure.

Whether to approve a loan modification was within the lender's discretion, as Nguyen acknowledges.  She was delinquent on her mortgage payments.  The trustee was entitled to foreclose on the deed of trust.  (Civ. Code, § 2924; *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.)  Her alleged damages resulted from her default on her mortgage payments, not from any misrepresentation by Margolis.  Because she could not demonstrate the required elements of misrepresentation and damages, the trial court properly granted summary judgment in favor of Margolis on Nguyen's cause of action for intentional misrepresentation.

## III.  Disposition

The judgment is affirmed.

_____
Mihara, J.

WE CONCUR:


_____
Elia, Acting P. J.


_____
Grover, J.

15