Filed 10/5/23  Hansen v. Southside Neighborhood Stabilization 2021-5 CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARK HANSEN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SOUTHSIDE NEIGHBORHOOD STABILIZATION 2021-5, <br><br> Defendant and Respondent. | F084564 <br><br> (Super. Ct. No. MCV086034) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Michael J. Jurkovich, Judge.

Shapero Law Firm and Sarah Shapero for Plaintiffs and Appellants.

Sokolof Remtulla and Daniel I. Singer for Defendant and Respondent.

-ooOoo-

Plaintiffs Mark and Christina Hansen appeal the trial court's decision to sustain a demurrer to their second amended complaint in favor of defendant Southside Neighborhood Stabilization 2021-5 (Southside).  The allegations of the complaint address the 2021 nonjudicial foreclosure of a residence plaintiffs purchased in Madera County in

1994. Based on our review of the record and the relevant legal doctrines, we conclude the demurrer was properly sustained.

## FACTUAL SUMMARY[1]

In April 1994, plaintiffs purchased a residence on Varden Drive in Madera County (the property). Details of the purchase are unknown. In 2004 plaintiffs received a loan from MortgageIT, Inc. for $102,000, secured by a first trust deed recorded on the property.

In December 2020, all beneficial interest under the trust deed was assigned to US Bank Trust National Association (Bank), which essentially became the lender and beneficiary on the loan. At some point, SN Servicing Corporation (SN Servicing) became the servicer on the loan and trust deed.

On February 2, 2021, Prestige Default Services, LLC substituted in as trustee. Prestige filed a notice of default and election to sell. The default amount was $83,074 as of this date.

On May 13, 2021, a notice of trustee's sale was recorded, with the sale set for June 16, 2021. The unpaid loan balance and other charges were listed at $144,126 as of that date. The trustee's sale occurred on June 16, 2021. Southside was the successful bidder at $151,100. A trustee's deed to Southside was executed on August 3 and recorded on August 18, 2021.

On July 20, 2021, plaintiffs filed a separate complaint against Ocwen Loan Servicing, LLC, (a prior servicer of the loan), SN Servicing and US Bank in the Madera County Superior Court,[2] which allegedly resulted in a lis pendens recorded on July 28,

---

[1]     This factual summary is primarily taken from the allegations of the second amended complaint (SAC) and exhibits which have been judicially noticed by the trial court in ruling on the various motions included in the appellate record.

[2]     Plaintiffs make a claim in their opening brief that they filed a lis pendens against the property on July 28, 2021, which we presume was related to this separate action. Plaintiffs cite a request for judicial notice to support this claim. No such document exists

2.

2021 and a temporary restraining order (TRO) issued on August 13, 2021, preventing these particular defendants (not Southside or Prestige Default Services, the trustee who recorded the trustee's deed) from recording a trustee's deed against the property.[3]  On August 21, 2021, plaintiffs discovered a trustee's deed had been recorded against the property on August 18, 2021, evidencing the transfer to Southside.  On August 23, 2021, the Ocwen case was removed to federal court and later dismissed.[4]

## PROCEDURAL SUMMARY

Plaintiffs filed a complaint on September 8, 2021, against SN Servicing, Bank, and Southside.[5]  Following a demurrer, a first amended complaint (FAC) was filed on November 5, 2021.  Southside again demurred, arguing generally that they were a bonified purchaser for value (BFP), and therefore protected from suit.  Plaintiffs objected to the demurrer, arguing Southside was not a bona fide purchaser due to the separate action against Ocwen, SN Servicing and US Bank, referred to above, which resulted in the issuance of a TRO before the trustee's deed was recorded.

Before ruling on the demurrer to the FAC, the trial court asked for supplemental briefing on the issue of whether plaintiffs should be given leave to amend their complaint to allege whether they were ready, willing, and able to tender the amount necessary to redeem the property, in light of plaintiffs' allegations of defects in the foreclosure

---

in the appellate record, and no request for judicial notice was made by plaintiffs to this court.

[3]     This separate action is not part of this appeal.

[4]     The referred to TRO is not part of the appellate record.  A TRO is a temporary order that generally expires after a short period of time.  (See Code Civ. Proc., § 527.) We were provided no documentation that the referenced TRO was still in existence when the trustee's deed was recorded on August 13, 2021.

[5]     In 2021, Plaintiff's filed three separate actions related to the foreclosure of their property.  Southside was named only in this action.  Unless specified otherwise, the details and status of the other cases is not relevant to our analysis or decision.

3.

procedures contained in the fifth and sixth causes of action. Following the filing of briefs on this issue by the parties, and a tentative ruling, the court issued the following ruling:

> "[T]he Demurrers by Defendants are sustained with leave to amend. Plaintiffs' request to allege an ability to tender the reinstatement amount is denied. However, Plaintiffs are given leave to amend to allege an ability to tender the redemption value. Plaintiffs agree that, if they cannot allege an ability to tender the redemption value, they will amend to eliminate all allegations and pleas for equitable relief (with the exception of Plaintiffs' claim for violation of Cal. Business and Professions Code § 17200, et seq)."[6]

Plaintiffs filed their SAC on April 12, 2022, which contained the same causes of action as the FAC. The SAC is the operative complaint. In the factual summary, plaintiffs added paragraph No. 20, to address the tender issue:

> "Plaintiffs have the funds necessary to tender the entire outstanding balance on this loan at the time of the sale, plus any interest, taxes and insurance that has become due since the date of the sale. Plaintiffs are ready, willing and able to tender all amounts outstanding on the loan, ie, the redemption value of the property."

The first cause of action for breach of contract was alleged only against defendants SN Servicing and Bank. The remaining five counts were alleged against all defendants, including Southside. These causes of action alleged unfair competition, in violation of Business and Professions Code section 17200 et seq. (second cause of action); cancelation of recorded instruments (third cause of action); slander of title (fourth cause of action); violations of Civil Code[7] sections 2924c and 2924d by including improper financial demands in their foreclosure filings (fifth cause of action); and including false information in the notice of default in violation of section 2924, subdivision (a)(1)(C) (sixth cause of action).

---

**6**     As noted below, this is not the correct legal description of a proper tender under Civil Code section 2903.

**7**     All further statutory references are to the Civil Code, unless otherwise specified.

Southside demurred to the SAC on April 20, 2022. For each of the five causes of action alleged against them, Southside demurred on the grounds that each failed to state a cause of action, since they were bona fide purchasers for value of the property, with no actual or constructive knowledge of another's rights. A new request for judicial notice was also filed on behalf of Southside, again attaching various recorded documents related to the foreclosure.

On May 23, 2022, the trial court sustained Southside's demurrer to each cause of action brought against it by plaintiffs, without leave to amend. Based on an earlier stipulation of the parties, the second (unfair business competition), fifth and sixth (improper foreclosure filings) causes of action, were without leave to amend. With respect to the third and fourth causes of action (cancellation of recorded documents and slander of title), the court noted its ruling was subject to plaintiffs' objections to the sustaining of those demurrers without leave to amend. The court entered an order expunging the lis pendens recorded on the property on October 14, 2021, and entered judgment dismissing the action against Southside, with prejudice. This appeal followed.

## DISCUSSION

While the demurrer to the SAC was sustained as to all five causes of action alleged against Southside, plaintiffs are only asking for a review of the trial court's order on three causes of action—unfair competition under Business and Professions Code section 17200 (second cause of action),[8] cancellation of instrument (third cause of action), and slander of title (fourth cause of action).

_____

[8]     As noted above, the parties entered into a stipulation that this cause of action was "without leave to amend." The wording of this stipulation creates confusion because the parties discuss this cause of action as if a reversal from this court would result in the claim remaining viable. We choose to interpret the stipulation to mean the claim for unfair competition against Southside will survive only if this court reverses the trial court's ruling that plaintiffs failed to state a cause of action as it is currently written, but have given up the ability to further amend the cause of action to correct pleading deficiencies.

5.

*Standard Of Review*

" 'On appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, the appellant "has the burden to show either [that] the demurrer was sustained erroneously or that to sustain the demurrer without leave to amend constitutes an abuse of discretion." ' " (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 866 (*Blickman Turkus, LP*).) Because a general demurrer raises only the pure question of law of whether the facts set forth in the challenged pleading are sufficient to constitute a cause of action, the reviewing court considers it without giving deference to the trial court's determination. (*Ibid.*; see Code Civ. Proc., § 430.10, subd. (e).) The standard of review is, therefore, de novo. (*Villafana v. County of San Diego* (2020) 57 Cal.App.5th 1012, 1016.) In this examination of the allegations of the challenged pleading, the reviewing court may also consider matters judicially noticed. (*Blickman Turkus, LP*, at p. 866.) We may affirm the demurrer on any basis, regardless of the ground relied upon by the trial court when making its ruling. (*Travelers Indemnity Company of Connecticut v. Navigators Specialty Insurance Company* (2021) 70 Cal.App.5th 341, 353.)

To properly state a cause of action, the SAC must allege every element of the cause of action or actions raised. (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1134.) For purposes of reviewing a demurrer, while we must accept the factual allegations as true, we are not required to assume the truth of alleged " 'contentions, deductions or conclusions of law' because 'appellate courts must independently decide questions of law.' " (*Ibid.*) Once we complete that portion of the review, we must then decide whether it is reasonably possible the defect or defects can be cured with an amendment. (*Ibid.*)

I.  APPLICATION OF THIS STANDARD OF REVIEW TO THE SAC

One crucial question presented in this appeal is whether plaintiffs adequately pled in paragraph No. 20 of the SAC the required elements to constitute a proper tender of

sufficient monies to redeem the property necessary to vacate the foreclosure of the property. We conclude they have not. To appreciate the importance of this requirement to the issues presented in this case, we provide a brief summary of the nonjudicial foreclosure process.

### A. *Nonjudicial Foreclosures*

The two methods generally available to foreclose property are commonly referred to as judicial and nonjudicial foreclosures. The type of foreclosure involved in this case was a nonjudicial foreclosure, which is governed by statute.

> "Civil Code section 2924, subdivision (a)(1) is part of a broad statutory system that creates a largely ministerial process leading to a foreclosure sale that does not require any court oversight. 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' " (*Arabia v. BAC Home Loans Servicing, LP* (2012) 208 Cal.App.4th 462, 471, citing *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.)

In fact, section 2924, subdivision (c) specifically provides:

> "A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice."

A suit in equity to set aside a nonjudicial foreclosure sale requires the pleading of three elements: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale suffered prejudice or harm; and (3) the trustor tenders the amount of the secured indebtedness or was excused from tendering. (*Ram v. OneWest*

7.

*Bank, FSB* (2015) 234 Cal.App.4th 1, 10–11.) Nonjudicial foreclosures are presumed to have been conducted regularly and properly, and thus, the party challenging the sale has the burden of affirmatively pleading and proving an improper procedure. (*Id*. at p. 14.) Again, the validity of the sale is presumed if the buyer is designated to be a BFP. Furthermore, if the deed recites the necessary formalities, the presumption is rebuttable in a post foreclosure case *only* against *the trustee or mortgagee* if it can be shown the trustee's sale was procedurally flawed. (*Munger v. Moore* (1970) 11 Cal.App.3d 1, 5–9.)

### 1. *The Procedures Used and the Issue of Tender*

Again, there were no allegations of procedural defects in how the nonjudicial foreclosure was conducted in 2021.[9] The allegations in the SAC fail to allege that the actual procedures utilized were improper. There were also no allegations, even in paragraph No. 20, suggesting a proper tender was made and had been rejected after the nonjudicial foreclosure was initiated, or at some point before the process was completed.

A proper tender can redeem a debt in both judicial and nonjudicial foreclosures. "A debtor on a loan secured by a deed of trust on real property has at least two ways under state law to prevent a foreclosure sale." (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 777.) The debtor in a nonjudicial foreclosure has the power to either reinstate or cure the loan by bringing the payments current, no later than five business days before the scheduled sale (§ 2924c, subds. (a)(1), (e)), or the debtor may redeem or pay off the loan by paying off the entire amount owed before the sale occurs. (*Crossroads Investors, L.P., supra,* at p. 778, discussing §§ 2903, 2905.)

Under section 2905:

---

**9** Plaintiffs allege a failure to properly communicate during 2020 before the nonjudicial foreclosure commenced. None of those allegations are connected to the period of time relevant to the nonjudicial foreclosure.

"Redemption from a lien is made by performing, or offering to perform, the act for the performance of which it is a security, and paying, or offering to pay, the damages, if any, to which the holder of the lien is entitled for delay."

A tender of the indebtedness is required before a judgment can be entered canceling a sale under a deed of trust. (*Py v. Pleitner* (1945) 70 Cal.App.2d 576, 582.) However, a tender of payment will be considered ineffective if the offeror did "not have the present ability to make the tender good." (*Napue v. Gor-Mey West, Inc.* (1985) 175 Cal.App.3d 608, 621.) " '[I]t is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect.' " (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439.) This issue is important because a trustor who does not make a valid offer of tender before property is sold in a trustee's sale can no longer redeem or otherwise recover the property regardless of any present willingness to pay the debt. (See 5 Miller & Starr, Cal. Real Estate (4th ed. 2022) § 13:266, p. 13-1207.) At this point, the delivery of the trustee's deed after the foreclosure sale is considered "merely a ministerial act." (*Ballengee v. Sadlier* (1986) 179 Cal.App.3d 1, 4.)

After the court sustained the demurrer to the first amended complaint, plaintiffs added paragraph No. 20 to the SAC as follows:

"Plaintiffs have the funds necessary to tender the entire outstanding balance on this loan at the time of the sale, plus any interest, taxes and insurance that has become due since the date of the sale. Plaintiffs are ready, willing and able to tender all amounts outstanding on the loan, ie, the redemption value of the property."

We observe two problems with this allegation. First, the allegation is stated in the present tense, rather than referencing their ability to pay everything that was due before the trustee's sale in June 2021. When property is foreclosed nonjudicially and sold at a trustee's sale, the trustors' interest in the property is totally and finally terminated, and neither the trustor nor any other person with an interest in the property can redeem or otherwise recover the property regardless of a subsequent willingness to satisfy the full

9.

amount of the debt owed. (5 Miller & Starr, Cal. Real Estate, *supra,* § 13:266, p. 13-1207.)

Second, when a tender is required and not excused, a plaintiff seeking to set aside a trustee's sale must allege a *tender was made* of the full amount of the loan to maintain any cause of action that is either based on wrongful foreclosure allegations or seeking redress from that foreclosure.[10] (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109.) Besides the reference to a bond sent to another entity in 2018,[11] there was no allegation in the SAC that plaintiffs made an offer of proper tender between the time of the notice of default and the trustee's sale in 2021. Nor was there any allegation of the existence of an enforceable agreement modifying the terms of the promissory note that would have prevented the trustee's sale from going forward. (*Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1017; see also *Bank of America v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 712 ["If, after a default, the trustor and beneficiary enter into an agreement to cure the default and reinstate the loan, no contractual basis remains for exercising the power of sale."].)

The issue of tender was a specific concern of the trial court when considering the demurrer to the first amended complaint, with the court giving plaintiffs one final chance to allege a proper tender had been made. This was especially important to the second cause of action for unfair competition, presumably based on a wrongful foreclosure, and the third cause of action seeking the cancellation of instruments. Both causes of action required proper tender. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104 [in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor must show

---

[10] We note there were also no allegations that tender was either unneeded or that the reinstatement/redemption value was incorrect. (See *Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 424.)

[11] Counsel for plaintiffs admitted in an earlier hearing that the bond was not alleged to be an offer of tender.

they tendered the amount of the secured indebtedness or were excused from tendering]; see *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 878 [plaintiffs were required to allege tender or an offer of tender of the amounts borrowed as a prerequisite to the claim].)

Without some language alleging plaintiffs actually tendered or attempted to tender the outstanding balance, that there was some flaw in how the tender amount was calculated, or that there had been a modification that should have excused the need for tender, once the trustee's sale occurred and Southside was the winning bidder, plaintiffs' ability to pursue an action against Southside ended.[12] (See *Moeller v. Lien*, *supra*, 25 Cal.App.4th at p. 832.)

### 2. *Southside's Status as a BFP*

While conducting our de novo review, we restate the general proposition that under section 2924, there is a statutory presumption created in favor of a BFP who receives a trustee's deed that contains language stating the trustee fulfilled the statutory notice requirements. (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1250.) The two elements that must exist for a buyer to be designated a BFP are that (1) the purchase by the BFP was in good faith for value, and (2) the BFP had no knowledge or notice of the asserted rights of another. (*Melendrez*, at pp. 1251–1252.) Therefore, absent allegations of fraud or knowledge by the BFP, a trustor cannot set aside a foreclosure sale to a BFP by alleging irregularities in the way the foreclosure sale proceeded. (*Id*. at p. 1256.) "[A] bona fide purchaser is not chargeable with the fraud of his predecessors and takes a title purged of any anterior fraud affecting it and free from

---

**12** We decline to address Southside's assertion that paragraph No. 20 in the SAC created a sham pleading. As we have already stated above, the failure to allege an actual tender or attempted tender and the ability to tender the full amount owed prior to the trustee's sale, or that they were excused from providing tender, is fatal to Plaintiffs' appeal.

any equities existing between the original parties."[13]  (*Marlenee v. Brown* (1943) 21 Cal.2d 668, 675,)

The SAC contained no allegations suggesting Southside was not acting in good faith when it purchased the Madera County property, or had any knowledge plaintiffs were claiming to have a viable interest in the property.  Nor were there any allegations the statutory requirements for a nonjudicial foreclosure were not met.[14]  Plaintiffs contend in their briefs that designating Southside a BFP at the demurrer stage was improper because it appeared to resolve a question of fact.  However, plaintiffs failed to include any allegations challenging Southside's status as a BFP, which is presumed once a trustee's deed is delivered with the required disclosures that all notices had been provided.  (*Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 700.)

---

[13]    Such existing equities could include an action between the trustor and the beneficiary or the trustee.

[14]    We are aware from Southside's request for judicial notice filed with their demurrer to the SAC that included a notice of default and election to sell under deed of trust was recorded on February 8, 2021, and a notice of trustee's sale was recorded on May 13, 2021.  The trustee's sale was held on June 16, 2021.  On this court's own motion, filed on August 8, 2023, we expressed our intent to take judicial notice of various documents that were the subject of Southside's requests for judicial notice in the trial court.  Because no opposition was filed by August 30, 2023, as was required in the order, we now take judicial notice of the following documents: 1) the deed of trust recorded in the official records of the Madera County Recorder's Office on May 27, 2004, as document No. 2004022632; 2) the assignment of deed of trust recorded in the official records of the Madera County Recorder's Office on December 15, 2020, as document No. 2020032696; 3) the substitution of trustee recorded in the official records of the Madera County Recorder's Office on February 8, 2021, as document No. 2021003872; 4) the notice of default and election to sell under deed of trust recorded in the official records of the Madera County Recorder's Office on February 8, 2021, as document No. 2021003873; 5) the notice of trustee's sale recorded in the official records of the Madera County Recorder's Office on May 13, 2021, as document No. 2021015433; 6) the trustee's deed upon sale recorded in the official records of the Madera County Recorder's Office on August 18, 2021, as document No. 2021026041; and 7) the notice of pendency of action recorded in the official records of the Madera County Recorder's Office on October 14, 2021, as document No. 2021032070.

### 3. The Lack of Specific Allegations Supporting Fraudulent Activity

There is also a lack of specificity in any allegations that might support a claim of fraud, challenging Southside's BFP status.  While a separate cause of action for fraud may not have been necessary here, several claims raised by plaintiffs suggest fraudulent activity.  Allegations of fraud in a complaint generally require specificity.  (See *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216.)  In drafting the complaint,

> " '(a) [g]eneral pleading of the legal conclusion of "fraud" is insufficient; the facts constituting the fraud must be alleged.  (b) Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings … will not ordinarily be invoked to sustain a pleading defective in any material respect.' "  (*Committee on Children's Television, Inc. v. General Foods Corp.*, *supra*, 35 Cal.3d at p. 216.)

In the specific causes of action for unfair competition, cancellation of instrument, and slander of title, there were only conclusory allegations suggesting the filing of the trustee's deed was improper and in violation of a court order.[15]

This is especially important with respect to plaintiffs' cause of action for slander of title.  The recording of documents related to a nonjudicial foreclosure are protected, at a minimum, by a qualified privilege that can only be overcome by fraud or malice.  (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 333; See also *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030.)  Absolutely no allegations specifically describe any acts of fraud or malice by Southside in the recording of the trustee's deed.  There is only a generalized statement that the document contained "false statements," without addressing Southside's BFP status and

---

[15]    Again, Southside was not a party bound by any court order issued in the other case.  Furthermore, there were no allegations in the complaint specifically stating Southside was bound to a court order in an action they were not a party to.  (See *Freeman v. San Diego Assn. of Realtors* (1999) 77 Cal.App.4th 171, 204.)

the protections that status is afforded. Plaintiffs allege no facts challenging Southside's status as a BFP, and therefore, Southside was justified in making a claim of title to the property and were protected by a qualified privilege against a claim of slander of title. (*Kachlon v. Markowitz, supra*,168 Cal.App.4th, at p. 333.)

## II. OTHER CHALLENGES RAISED BY PLAINTIFFS

Plaintiffs' briefs, both opening and in reply, contain conclusory statements that raise generalized contentions of unfairness. Yet, as in their SAC, there are no specific statements about how the process was unfair or unlawful.

For instance, plaintiffs repeatedly state that the trustee's deed was filed improperly either because there was already a lis pendens on the property or because Southside was enjoined from recording the trustee's deed due to the injunctive relief granted in another action. However, the SAC lacks any allegation that a lis pendens was in effect on the property when the trustee's sale of the property occurred on June 16, 2021. Plaintiffs admit in the SAC the action plaintiffs filed against SN Servicing, US Bank, and Ocwen was not filed until July 20, 2021, after the trustee's sale. Again, Southside and the trustee who recorded the trustee's deed were not parties to that action. A temporary restraining order issued in the Ocwen case was issued on August 13, 2021. When the trustee's deed was recorded on behalf of Southside on August 18, 2021, Southside was still not a party to the action in which the TRO was issued.

Plaintiffs also contend the trial court did not have the ability to take judicial notice of the information contained within the trustee's deed, beyond the date it was recorded. When considering the allegations of a challenged pleading, a reviewing court may also consider matters judicially noticed. (*Blickman Turkus, LP*, *supra*, 162 Cal.App.4th at p. 866.) Courts often take judicial notice of the existence and recordation of real property records, including deeds of trust, when the authenticity of the documents are not challenged. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264.) In fact, trial courts reviewing rulings on demurrers often take judicial notice of the parties

14.

involved in a transaction, the dates listed in the document, and sometimes the legal consequences of a series of recorded documents related to a real estate transaction. (*Id*. at p. 265, citing *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117–1118.) "[A] demurrer may be sustained where judicially noticeable facts render the pleading defective .…" (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751.)

Southside sought judicial notice of the trustee's deed three times in the trial court. Plaintiffs never included any allegations in the two amendments to their complaint suggesting the information contained in the trustee's deed was inaccurate, such as the dates when the documents were recorded.

Finally, plaintiffs argue Southside should not have been dismissed from this action because they were in "privity" with the other defendants. Other than a general allegation that each defendant was an agent of the others, there were no specific allegations suggesting Southside was in privity with either SN Servicing or US Bank in the handling of the mortgage or the trustee sale.

### III. SHOULD PLAINTIFFS BE GIVEN ANOTHER OPPORTUNITY TO AMEND THEIR COMPLAINT AGAINST SOUTHSIDE?

The relevant standard of review requires that once we decide a demurrer was properly sustained, we must next decide whether it is reasonably possible the defect or defects in the complaint can be cured with an amendment. (*Boyd v. Freeman* (2017) 18 Cal.App.5th 847, 853–854.) On this point, the burden belongs to the plaintiffs to show what facts they could have pled to cure the existing defects in the complaint. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890.) "To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action." (*Ibid.*) Moreover, A trial court does not abuse its discretion when it sustains a demurrer without leave to amend if either:

"the facts and nature of the complainant's claim are clear and under the substantive law no liability exists or it is probable from the nature of the defects and previous unsuccessful attempts to plead that complainants cannot state a cause of action." (*Kately v. Wilkinson* (1983) 148 Cal.App.3d 576, 581.)

In their reply brief to this court, plaintiffs state:

"Appellants were on record raising additional factual issues such as (1) the Lis Pendens filed <u>before</u> Respondent recorded the [trustee's deed], (2) additional facts to establish the issue of 'tendering reinstatement', (3) Respondent's supposed BFP status, even though Appellants suspect that Respondent did not buy the property at the Sale, but after[,] during the 'Notice of Intent to Bid' period, and (4) the fact that Respondent seems to be profit-motivated, rather than non-profit as it originally contended."

Based on our review of the record, this list constitutes general allegations plaintiffs have made before when opposing each demurrer or represent speculation on their part now at the very end of the process. The first two "factual issues" listed by plaintiffs address information that would have been within their own knowledge from the very beginning. The third and the fourth "factual issues" suggest fraud on Southside's part, which would have required much more specificity, as discussed before, and which we cannot confirm was actually presented to the trial court below.[16]

Again, we are permitted to affirm a demurrer on any basis, regardless of the specific ground or grounds relied upon by the trial court when making its ruling.

---

[16] Plaintiffs reference hearings in the trial court for which we do not have transcripts. It was plaintiffs' obligation to provide an adequate record for this appeal. "If an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings .…" (Cal. Rules of Court, rule 8.120(b).) A record of the lower court proceedings is required to both support allegations of claimed error, and to facilitate an appellate court's review of those claims. (*In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 498–499.) There will be no reversal of an order when there is no record explaining what occurred at the underlying hearing or the trial court's reasoning. (*Rhule v. WaveFront Technology, Inc.* (2017) 8 Cal.App.5th 1223, 1228–1229.) Finally, a party to an appeal cannot rely on documents referenced in any pleadings submitted to the trial court when those documents have not been transmitted to the appellate court as part of the appellate record. (See *Hiser v. Bell Helicopter Textron Inc.* (2003) 111 Cal.App.4th 640, 656–657.)

16.

(*Travelers Indemnity Company of Connecticut v. Navigators Specialty Insurance Company, supra,* 70 Cal.App.5th at p. 353.) We believe it is improbable, based on their prior efforts, that plaintiffs can make the necessary changes to the SAC that would allow this case to proceed against Southside for unfair competition, cancellation of instruments, or slander of title due to Southside's status as a BFP. Plaintiffs have, therefore, not met their burden to overturn the trial court's ruling on the SAC.

## DISPOSITION

The judgment dismissing plaintiffs' action against Southside is affirmed. Costs are award to Southside in this appeal.


FRANSON, J.

WE CONCUR:


HILL, P. J.


SMITH, J.


17.