ORDERED PUBLISHED



FILED

FEB 3 2026

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re:<br>RICHARD GARCIA,<br><div align="right">Debtor.</div> | BAP No. CC-25-1095-NSC<br><br>Bk. No. 8:23-bk-11462-MH |
| STEPHEN EDWARD, as trustee of the<br>Stephen Edward Trust UDT 7/19/23,<br><div align="right">Appellant,</div><br>v.<br>RICHARD GARCIA,<br><div align="right">Appellee.</div> | Adv. No. 8:23-ap-01131-MH<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Mark D. Houle, Bankruptcy Judge, Presiding

### APPEARANCES

Miles L. Prince argued for appellant; Andrew S. Bisom of Bisom Law Group argued for appellee.

Before: NIEMANN, SPRAKER, and CORBIT, Bankruptcy Judges.

NIEMANN, Bankruptcy Judge:

### INTRODUCTION

Richard Garcia ("Debtor") fell behind on the mortgage on his triplex (the "Property"). He filed bankruptcy the morning of a scheduled nonjudicial foreclosure sale, but failed to provide notice to the foreclosing

trustee. The sale was conducted, and The Stephen Edward Trust UDT 7-19-2023 ("Trust") submitted the high bid. Trust took actions to assert its ownership and control of the Property. However, the foreclosing trustee ultimately refused to issue a deed and, weeks later, rescinded the sale.

Debtor filed an adversary proceeding seeking a determination of ownership of the Property and an injunction against Trust to prohibit interference with the Property. Trust counterclaimed, seeking to have title quieted in its name. On cross-motions for summary judgment, the bankruptcy court determined the foreclosure sale was not completed and the Property belonged to Debtor's bankruptcy estate.

The decision required an analysis of Civil Code § 2924m,[1] a COVID inspired addition to California nonjudicial foreclosure law that provides advantages to prospective owner-occupant bidders in certain nonjudicial foreclosures by expediting the sale process and limiting overbids. In reaching its conclusion, the bankruptcy court determined Trust did not qualify as a prospective owner-occupant.

Finding no error in either the bankruptcy court's decision in Debtor's favor or the injunctive relief granted, we AFFIRM. We publish to highlight who may qualify as a prospective owner-occupant under Civil Code § 2924m(c)(1) and how such a determination should be made.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure. As used herein, "Civil Code" shall mean the California Civil Code.

# FACTS[2]

## A.    Foreclosure Sale and Bankruptcy Case

The Property is security for a loan held by Wilmington Savings Fund Society, FSB ("Lender"). Debtor lives in one unit of the Property and rents two of the units. Debtor fell behind in the payments owing to Lender prepetition, and Lender commenced nonjudicial foreclosure proceedings. Quality Loan Service Corporation ("Quality") served as the foreclosing trustee.

On July 19, 2023, the morning of a scheduled foreclosure sale ("Foreclosure Sale"), Debtor filed a voluntary bankruptcy petition. Debtor did not notify Quality of the bankruptcy filing, and the Foreclosure Sale went forward later that same day.

Susan Amster attended the Foreclosure Sale as the authorized representative of Trust. Ms. Amster, acting on behalf of Trust, submitted the highest bid at the Foreclosure Sale in the final amount of $1,077,000. She presented cashier's checks exceeding the final bid amount and received a refund for the difference. Ms. Amster also received a written Receipt of Funds from Quality on the day of the Foreclosure Sale reflecting her payment, on behalf of Trust, of the final bid amount (the "Receipt of Funds"). On this receipt, Ms. Amster identified herself as the

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and related proceedings. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

representative of a "company" identified as "C.I.C." with a mailing address in Orange, California. Ms. Amster further specified on the receipt that the Property should be vested in "The Stephen Edward Trust UDT 7-19-2023, CIC as Trustee."

Notice of the bankruptcy filing was electronically sent by the bankruptcy court to Quality the next day.

During the two months immediately following the Petition Date, Debtor and Trust took several overlapping actions. Stephen Edward ("Edward"), as trustee of Trust, filed a motion for retroactive relief from stay (the "Motion for Relief from Stay"). Approximately 30-days post-petition, the bankruptcy court annulled the stay retroactive to the petition date as to actions taken on behalf of Trust with respect to the Property ("Stay Order").[3]

While the Motion for Relief from Stay was pending, the bankruptcy court entered an order and notice dismissing Debtor's case for his failure to timely submit required case commencement documents (the "Dismissal Order").

A few days after entry of the Dismissal Order, Edward, as trustee of Trust, filed a Verified Complaint to Quiet Title against Debtor and Quality in the Orange County Superior Court (the "State Court Case").[4] On the

---

[3] A subsequent motion by Debtor to reconsider the Stay Order was denied.

[4] Debtor's motion for summary judgment indicates, "Almost 1½ years later the

4

same day the Stay Order was entered, Edward, as trustee of Trust, recorded a lis pendens with the Orange County Recorder based on his State Court Case.

Debtor, now represented by counsel, filed a motion to set aside the Dismissal Order (the "Motion to Set Aside Dismissal") which was granted by the bankruptcy court (the "Order Vacating Dismissal"). [5]

Debtor also filed a chapter 13 plan, which was confirmed in November (the "Plan Confirmation Order"). The plan requires Debtor to sell the Property within 90 days of the completion of the adversary proceeding that is the subject of this appeal. Debtor asserts he is unable to sell the Property, absent resolution of this appeal, due to Trust's cloud on the title.

## B. Quality Rescinds Foreclosure Sale

While the Motion for Relief from Stay and Motion to Set Aside Dismissal were pending, David L. Prince, attorney for Edward, as trustee for Trust, was in email communication with Quality seeking a Trustee's Deed Upon Sale ("Sale Deed"). Shortly after the Foreclosure Sale, Mr. Prince submitted a prospective owner-occupant affidavit, meant to satisfy the requirements of Civil Code § 2924m(c)(1), which was

---

summons and complaint have still not been served and the matter has languished in the State Court."

[5] In the Order Vacating Dismissal, the bankruptcy court specifically stated that the Order Vacating Dismissal does not affect the Stay Order.

electronically signed by Edward (the "Affidavit"). The Affidavit did not, however, establish all of the statutory requirements for prospective owner-occupant status. Conspicuously missing from the Affidavit was the required attestation that the highest bidder at the auction was a natural person.[6] The Affidavit directed Quality to issue the deed to "[t]he Stephen Edwards Trust UDT 7-19-2023, CIC as trustee."[7] Quality was on notice of the bankruptcy filing by the time the Affidavit was remitted.

Mr. Prince's further communications with Quality were routed to its legal department. On August 21, 2023, Quality requested a copy of the Stay Order. Quality also noted that because Edward was claiming to be a prospective owner-occupant per the Affidavit, title would be in the name of Edward and not in the name of his trust. On August 24, 2023, Mr. Prince emailed the Stay Order.

Dan Goulding, general counsel for Quality, responded that day with serious concerns about the Stay Order. Specifically, Mr. Goulding noted the Motion for Relief from Stay was brought, and the Stay Order granted, for the benefit of Trust. Mr. Goulding also expressed concerns regarding the distinction between Edward personally and Trust. Mr. Goulding explained

---

[6] Debtor notes that the Affidavit "deviates significantly from the form Quality Loan uses for its Affidavit of Compliance with Civ. Code §2924."

[7] Edward's name was misspelled on the Affidavit, as it was on many of the other items prepared and filed by Mr. Prince, as "Edwards" with an extra "s" on the end. The electronic signature on the Affidavit is spelled "Stephen Edward" and subsequent filings by Mr. Prince indicate that is the proper spelling.

that a prospective owner-occupant under Civil Code § 2924m(a)(1)(D) cannot be someone acting as an agent for an entity. Mr. Goulding said he discussed the issue with Mr. Prince "some time ago" and again requested a copy of the trust agreement to understand the relationship of the parties.

Emails continued between Mr. Prince and Mr. Goulding. On August 31, 2023, Mr. Prince asked Mr. Goulding to confirm no notices of intent to bid were received within 15 days of the Foreclosure Sale.[8] Within an hour, Mr. Goulding responded, reiterating his previous concerns, asking for more information, and stating two notices of intent to bid had been received. However, Quality had advised the prospective overbidders that "the overbid process was not in play" for two reasons. First, the overbid procedures of Civil Code § 2924m(c)(2) do not apply if the highest bidder at auction is a prospective owner-occupant, as Edward had asserted. Second, the bankruptcy filing prohibited the overbid process from proceeding. Mr. Goulding asked, yet again, for a copy of the trust agreement and for Mr. Prince to call him to discuss the matter.

Mr. Prince, ignoring Quality's continued request for a copy of the trust agreement, responded that the Stay Order applied to actions taken by Quality, the period to appeal the Stay Order would expire on September 6, and Quality should issue the Sale Deed upon the expiration of that

---

[8] Civil Code § 2924m(c)(2) allows certain parties to submit overbids or notices of intent to bid within 15 days of the public auction, when the high bidder is not a prospective owner-occupant.

deadline. Mr. Goulding responded the next day that he needed to confirm that the bid at the Foreclosure Sale was for Edward personally. He noted again that a prospective owner-occupant cannot be the agent of any other person or entity in purchasing the real property. He repeated his request for a copy of the trust agreement to try to resolve the prospective owner-occupant issue. Mr. Prince never provided the trust agreement.

A week later, Quality rescinded the Foreclosure Sale. Quality's email stated it was "unable to confirm" Trust qualified as a prospective owner-occupant under Civil Code § 2924m(c)(1). Each of the concerns previously relayed by Mr. Goulding to Mr. Prince were detailed as the basis for its decision. The funds from the Foreclosure Sale were returned and made payable to CIC, consistent with the cashier's checks remitted at the Foreclosure Sale.

On September 14, 2023, after a hearing before the bankruptcy court at which a motion by Debtor to reconsider the Stay Order was denied, Mr. Prince advised Mr. Goulding of the denial of the motion to reconsider the Stay Order, resubmitted the previously returned funds, and demanded an immediate Sale Deed. Mr. Goulding responded the next day stating the problem was not with the potential challenge to the Stay Order but rather the identity of the high bidder at the auction. Mr. Goulding noted that the agent at the auction, the Affidavit, and the Motion for Relief from Stay all asserted "in no uncertain terms" that Trust, and not Edward personally, was the winning bidder at the Foreclosure Sale. Mr. Goulding further

noted the overbid process, which might have been pursued if Edward had not insisted that he personally qualified as a prospective owner-occupant, was lost due to the bankruptcy filing. Mr. Goulding concluded that "as a result the foreclosure process is flawed as the overbid process was not advanced as required under [California] law[,]" and a Sale Deed cannot be issued.

On October 2, 2023, Mr. Prince sent a three-page demand letter to Mr. Goulding which concluded as follows: "To be clear, if the [Sale Deed] is not fully issued, and submitted to my client at the close of business on October 6, 2023, litigation will commence." It is undisputed that a Sale Deed was not issued by Quality as to the Property. After further correspondence, the funds remitted for the Foreclosure Sale were again returned on October 5, 2023, via transmittal to Mr. Prince's office.

## C.    Trust's Assertion of Control over Property

Notwithstanding Quality's refusal to issue a Sale Deed and its rescission of the Foreclosure Sale, Edward and Trust took actions to assert control over the Property. On September 1, 2023, Infinity Residential Management ("Infinity") sent letters to the occupants of the Property identifying "Stephen Edward, trustee" as the new owner of the Property and Infinity as the new property manager. Tenants were directed to pay all rents for September 1, 2023 forward through Infinity. Debtor's counsel responded with a cease-and-desist letter to Mr. Prince on September 8, 2023. On September 13, 2023, Infinity issued a 3-Day Notice to Pay Rent or

Quit to both tenants. On September 29, 2023, Infinity followed up with an email to the tenants reminding them that "your rent payment is due on October 1st." A tenant replied "[p]lease stop sending me these."[9]

On November 29, 2023, Infinity again emailed tenants demanding payment of rents. Debtor alleged Trust also damaged landscaping at the Property. Consequently, Debtor sought sanctions against Edward, Trust, and Infinity for violation of the automatic stay (the "Sanctions Motions"). The chapter 13 trustee filed a joinder to the Sanctions Motion. The hearing on the Sanctions Motion was continued several times, trailing related actions in the adversary proceeding described below. After judgment was entered in Debtor's favor in the adversary proceeding, the bankruptcy court entered an order denying the Sanctions Motion.[10]

### D. Adversary Proceeding

On November 15, 2023, shortly after the entry of the Plan Confirmation Order, Debtor filed an adversary proceeding against Edward, as trustee for Trust, seeking declaratory relief to determine the validity, priority, and extent of the parties' interests in the Property. Debtor was seeking a determination that Trust never acquired any interest in the

---

[9] On September 25, 2023, Debtor filed a motion for an order to show cause against Edward, Trust, and Infinity for willful violation of the automatic stay for the repeated communications with the tenants. On October 6, 2023, the bankruptcy court denied the request without prejudice.

[10] The judgment in the adversary proceeding enjoined Trust and its agents from continuing the actions complained of in the Sanctions Motion.

Property and that the Property is part of his bankruptcy estate. The adversary proceeding also sought injunctive relief against Trust and its agents, representatives, and employees to prevent further interference with the Property and its tenants. Edward's answer on behalf of Trust included counterclaims against Quality and Debtor to quiet title in its name and for specific performance requiring issuance of a Sale Deed.[11]

The parties filed cross-motions for summary judgment in the adversary proceeding. Debtor's motion asserted Debtor was entitled to summary judgment that Debtor is the owner of record of the Property. Debtor argued the Foreclosure Sale did not satisfy the requirements under Civil Code § 2924m to be deemed final. Quality "pulled the sale, did not post information on its website for overbids and did not complete" the foreclosure process so "Debtor remains the owner of record." Debtor's motion also asked that Trust and its agents, representatives, and employees be enjoined from interfering with the rents and proceeds of the Property, contacting the tenants of the Property, damaging the Property, or otherwise interfering with Debtor's use and ownership of the Property.

Edward, as trustee of Trust, moved for summary judgment determining the Foreclosure Sale to be a "final sale" and declaring himself

---

[11] Quality brought a motion to dismiss the first amended counterclaim against it pursuant to Civil Rule 12(b)(6). Quality argued, among other things, that a foreclosing trustee "shall incur no liability for any good faith error" pursuant to Civil Code § 2924(b). Quality's motion was heard and granted, and the counterclaim as to Quality was dismissed with prejudice.

the legal owner of the Property. He asserted that all statutory requirements for finality of the Foreclosure Sale were met because Edward, a natural person, was the intended titleholder. Edward argued Quality accepted Edward's Affidavit, which rendered the sale "final" as a matter of law. Quality's subsequent refusal to issue the Sale Deed did not, per Edward's arguments, change the finality of the Foreclosure Sale.

The bankruptcy court issued a tentative ruling on the cross-motions for summary judgment (the "Tentative Ruling"). The Tentative Ruling highlighted that Civil Code § 2924m(c)(1) requires a prospective owner-occupant be a "natural person." The bankruptcy court, citing *Boshernitsan v. Bach*, 61 Cal. App. 5th 883, 895 (2021), noted that Edward, acting as trustee of Trust, might qualify as a "natural person" but neither party had addressed this narrow issue in their briefing. The bankruptcy court allowed the parties to submit additional briefing.

Edward, as trustee of Trust, filed a one paragraph document stating that Trust "declines to submit any further points and authorities." Debtor filed a supplemental brief and a supporting declaration with three exhibits. Debtor's supplemental brief argued: (1) Trust, and not Edward personally, was the highest bidder; and (2) neither Trust nor its declared trustee, CIC, were a "natural person" as required for the prospective owner-occupant provisions to apply.

The court issued its findings of fact and conclusions of law granting Debtor's motion for summary judgment and denying Edward's motion for

summary judgment (the "Order"). The court found, among other things, that Edward was not the trustee of Trust identified in the Receipt of Funds or Affidavit. The court further found Quality had not accepted the Affidavit, had rescinded the Foreclosure Sale, and had refunded the purchase price. The bankruptcy court concluded Trust was not a natural person entitled to an expedited closing, the overbid process was not completed, and the sale was never finalized. Therefore, Trust "does not hold an interest in the [P]roperty."

Judgment was entered the same day in favor of Debtor and against Edward, as trustee of Trust (the "Judgment"). The Judgment determined the Property "is and at all times has been" property of Debtor's estate and Edward, as trustee of Trust, "does not hold any right, title, or interest in or to" the Property. The Judgment also enjoined Trust and its agents from interfering with the Property or contacting the tenants.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.     Did the bankruptcy court err in granting the motion for summary judgment by Debtor and denying the motion for summary judgment by Edward, as trustee of Trust?

13

2.      Did the bankruptcy court err in granting injunctive relief against Trust and its agents, representatives, and employees as part of the Judgment?

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's summary judgment ruling. *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 823 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007). We likewise apply de novo review to the bankruptcy court's interpretation of state law. *Brace v. Speier* (*In re Brace)*, 979 F.3d 1228, 1232 (9th Cir. 2020); *Salven v. Galli (In re Pass)*, 553 B.R. 749, 756 (9th Cir. BAP 2016). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review a permanent injunction granted or denied as part of a summary judgment for abuse of discretion. *Giovanazzi v. Schuette (In re Lebbos)*, BAP No. EC-11-1735-KiDJu, 2012 WL 6737841, at *14 (9th Cir. BAP Dec. 31, 2012) (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1079 (9th Cir. 2004)). A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

14

**DISCUSSION**

**A. The bankruptcy court did not err in granting Debtor summary judgment and denying Edward summary judgment.**

Debtor's complaint and Edward's counterclaim as trustee of Trust pursue, in substance, the same cause of action—declaratory relief finding the respective party to be the rightful owner of the Property, also known as a quiet title action.[12] The parties agree that Civil Code § 2924m controls the issue of ownership in this instance. Under Civil Code § 2924m, title to the Property will be held by either Edward or Debtor. Therefore, granting one of the cross-motions for summary judgment necessitates denial of the other.[13] The question we review de novo is whether the bankruptcy court erred in granting summary judgment under the undisputed facts in the record.

**1. Requirements for Summary Judgment**

Summary judgment should be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014) (citing Civil Rule 56(a), made applicable in

---

[12] Debtor also sought the additional remedy of injunctive relief, which will be discussed separately below. This additional remedy does not, however, change the underlying cause of action.

[13] For this reason, the Panel rejects Edward's argument that separate notice was required to "grant" summary judgment in Debtor's favor as to the counterclaim asserted by Edward on behalf of Trust. The title of the Order makes clear the bankruptcy court's intent to grant Debtor's motion and deny Edward's motion for summary judgment.

adversary proceedings by Rule 7056). The trial court may not weigh evidence in resolving such motions, but rather determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997). A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

When considering a motion for summary judgment, evidence must be viewed in the light most favorable to the nonmoving party. *Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.)*, 311 B.R. 530, 534 (9th Cir. BAP 2004), *aff'd*, 182 F. App'x. 708 (9th Cir. 2006). The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998). Once the moving party has met its initial burden, the nonmoving party must show specific facts establishing the existence of genuine issues for trial. *Anderson*, 477 U.S. at 256.

**2.    Edward Failed to Demonstrate Any Genuine Issue of Material Fact that Would Preclude Summary Judgment**

On appeal, neither party challenges the following undisputed material facts relied upon by the bankruptcy court:

- A representative of Trust was the highest bidder at the Foreclosure Sale.

16

- The trustee of Trust identified in the Receipt of Funds was "CIC."

- Edward submitted the Affidavit to Quality in which he asserted he is "a prospective owner-occupant bidder as defined in [Civil Code] § 2924m."

- The trustee of Trust identified by Edward in the Affidavit was "CIC."

- The trustee of Trust identified in the State Court Case, bankruptcy case, and adversary proceeding is Edward.

- After the Foreclosure Sale, Quality did not conduct the overbid procedures outlined in Civil Code § 2924m(c)(2)-(4).

- Quality rescinded the Foreclosure Sale and refunded the purchase price to CIC.

- Quality did not convey the Sale Deed to Edward or Trust.

Edward argues on appeal that "[t]he evidence created genuine issues of material fact as to whether Edward satisfied the statutory requirements for 'deemed finality'" under Civil Code § 2924m(c)(1), and those disputes should be resolved at trial, not on summary judgment. However, in this instance, there are no disputed material factual issues regarding what Edward did and did not do in his attempt to satisfy these requirements. Rather, the sole issue presented is legal: whether Edward satisfied the statutory requirements for "deemed finality" under Civil Code § 2924m(c)(1). Therefore, no genuine issue of material fact remains precluding summary judgment.

17

### 3. California Law on Nonjudicial Foreclosure

California provides two paths for a lender to enforce its security interest in real property after a default—judicial foreclosure and, if the deed of trust includes a power of sale clause, nonjudicial foreclosure. *See Robin v. Crowell*, 55 Cal. App. 5th 727, 743 (2020) (discussing the statutory and caselaw framework between the two options); *Oxford St. Prop., LLC v. Rehab. Assocs.*, LLC, 206 Cal. App. 4th 296, 304 n.3 (2012) ("A beneficiary may pursue either remedy of judicial or nonjudicial foreclosure or both at the same time.").

Nonjudicial foreclosure sales are governed by a comprehensive framework set forth in Civil Code § 2924 et seq.

> The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.

*Moeller v. Lien*, 25 Cal. App. 4th 822, 830 (1994) (citation omitted). To achieve these goals, the power of sale under a deed of trust is placed in a third-party, the trustee. *Biancalana v. T.D. Serv. Co.*, 56 Cal. 4th 807, 813 (2013) ("There are three parties in the typical deed of trust: the trustor (debtor), the beneficiary (lender), and the trustee."). The property must be sold to the highest bidder at public auction conducted by the trustee or its appointee. Civil Code § 2924g(a)(1) (providing sale must be "made at

auction" to the highest bidder); *Biancalana*, 56 Cal. 4th at 813 ("The trustee, or anyone the trustee appoints, may serve as the auctioneer."). "The trustee at a foreclosure sale, moreover, has a duty to conduct the sale fairly and openly, and to secure the best price for the trustor's benefit." *Bank of Seoul & Tr. Co. v. Marcione*, 198 Cal. App. 3d 113, 118 (1988).

Prior to the enactment of Civil Code § 2924m, for most purposes, a trustee's sale was deemed complete and final when the last and highest bid was accepted at the public auction. Civil Code § 2924h(c) ("the trustee's sale shall be deemed final upon the acceptance of the last and highest bid"); *Millennium Rock Mortg., Inc. v. T.D. Serv. Co.*, 179 Cal. App. 4th 804, 809 (2009) ("The sale is deemed complete, for most purposes, when the auctioneer accepts the final bid[.]"); *In re Hager*, 651 B.R. 873, 881 (Bankr. E.D. Cal. 2023) (noting a foreclosure sale was final when "the gavel falls" under Civil Code § 2924h before the enactment of Civil Code § 2924m). The purchaser at a foreclosure sale takes title by a Sale Deed issued by the trustee, usually a few days after the auction. *Moeller*, 25 Cal. App. 4th at 831. If the Sale Deed is recorded within 21 days after the auction,[14] the sale "shall be deemed perfected as of 8 a.m. on the actual date of the sale." Civil Code § 2924h(c). "If the [Sale Deed] recites that all statutory notice requirements and procedures required by law for the conduct of the

---

[14] This relation-back period was originally 15 days. It was extended to 18 days in 2021, and 21 days in 2022, as part of the sweeping amendments made by the California legislature in response to the COVID pandemic.

foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." *Moeller*, 25 Cal. App. 4th at 831 (citations omitted). A standard Sale Deed includes a declaration by the trustee that all statutory requirements were satisfied.[15] However, "the conclusive presumption does not apply until a [Sale Deed] is delivered." *Id.* at 832.

In certain circumstances—including failure of consideration, defects in the statutory notices, or irregularities in the sale proceedings—the trustee may refuse to issue a Sale Deed to the highest bidder at the sale. *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 441 (2003). "[I]f there is a defect in the procedure which is discovered after the bid is accepted, but prior to delivery of the [Sale Deed], the trustee may abort a sale to a bona fide purchaser, return the purchase price and restart the foreclosure process." *Moeller*, 25 Cal. App. 4th at 832.

### 4. New Civil Code § 2924m effective 2021

California substantially modified its nonjudicial foreclosure scheme as described above in 2020, in response to the COVID pandemic shutdown.[16] The concern was that residents, who had been ordered to

---

[15] If a court later determines, however, "that declaration was not true . . . then the sale would be void and the [Sale Deed] invalid." *Spikes v. Quality Loan Serv. Corp. (In re Spikes)*, 662 B.R. 704, 708 (Bankr. E.D. Cal. 2024).

[16] S. B. 1079, Cal. 2019-20 Reg. Sess. (eff. Jan. 1, 2021) ("SB 1079").

shelter-in-place, would be displaced by opportunistic real estate investors in a wave of foreclosures upon nonpayment of outstanding loans. *See Applegate v. Carrington Foreclosure Servs., LLC*, 112 Cal. App. 5th 356, 360 (2025) (discussing legislative history behind Civil Code § 2924m). To try to mitigate this concern, the foreclosure process for "residential properties of one to four units" was altered by the addition of Civil Code § 2924m.[17]

Civil Code § 2924m alters the conventional finality provisions of Civil Code § 2924h(c).[18] Only if the last and highest bidder at the trustee's sale is a "prospective owner-occupant" is the sale deemed final under Civil Code § 2924m(c)(1) without further required steps.

The requirements to qualify as a prospective owner-occupant are detailed in Civil Code § 2924m(a)(1) and require that the bidder must be a natural person, who will occupy the property as their primary residence, and, as emphasized by Quality, is not acting as the agent for any other person or entity.[19] The high bidder has until 5 p.m. on the next business

---

[17] The changes made by SB 1079 were not limited to the addition of Civil Code § 2924m. However, the scope of this appeal, and thus our discussion here, is limited to the application of Civil Code § 2924m.

[18] *See* Civil Code § 2924m(h) ("This section shall prevail over any conflicting provision of Section 2924h.").

[19] Civil Code § 2924m(a)(1) provides as follows:

"Prospective owner-occupant" means a natural person who presents to the trustee an affidavit or declaration, pursuant to Section 2015.5 of the Code of Civil Procedure, that:
(A)   They will occupy the property as their primary residence within 60 days of

21

day following the auction to submit an affidavit or declaration to the trustee attesting that the bidder meets each of the prospective owner-occupant requirements set forth in Civil Code § 2924m(a)(1). *See* Civil Code § 2924m(c)(1). If the Sale Deed issued by the trustee is then recorded within 21 days of the auction, the sale is deemed perfected as of 8 a.m. on the date of the auction in accordance with Civil Code § 2924h(c).[20]

If the highest bidder at the auction is not a "prospective owner-occupant," then the provisions of Civil Code § 2924m(c)(2)-(4) determine finality. The foreclosure process is extended and certain categories of

---

the trustee's deed being recorded.

(B)   They will maintain their occupancy for at least one year.
(C)   They are not any of the following:
  (i)   The mortgagor or trustor.
  (ii)   The child, spouse, or parent of the mortgagor or trustor.
  (iii)   The grantor of a living trust that was named in the title to the property when the notice of default was recorded.
  (iv)   An employee, officer, or member of the mortgagor or trustor.
  (v)   A person with an ownership interest in the mortgagor, unless the mortgagor is a publicly traded company.
(D)   They are not acting as the agent of any other person or entity in purchasing the real property.

[20] Under revised Civil Code § 2924h(c)(3), the relation back period for perfection is extended to 60 days if the highest bidder at the auction is not a prospective owner-occupant and an "eligible bidder" submits a notice of intent to bid under Civil Code § 2924m(c)(2). Prior to a 2024 amendment, this language in Civil Code § 2924h(c)(3) referenced a submission under Civil Code § 2924m(c)(**3**) (emphasis added). *See Hager*, 651 B.R. at 882-886 (discussing ambiguity of 60-day relation back period prior to 2024 amendment).

parties—"eligible tenant buyer"[21] and "eligible bidder"[22]—are allowed to submit overbids. Within 15 days of the auction date, any eligible tenant buyer or eligible bidder may submit to the trustee a bid or notice of intent to place a bid.[23] If an eligible bid or notice of intent to bid is not received within the 15-day window, then the sale is deemed final under Civil Code § 2924m(c)(2). If an eligible bid or notice of intent to bid is received, the provisions of Civil Code § 2924m(c)(3) and (4) are triggered. Under either of these provisions, a second window for action is opened, extending to 45 days after the auction.[24]

The parties agree the extended overbid periods under Civil Code § 2429m(c)(2)-(4) do not apply here. From Edward's perspective, the extended overbid provisions are not applicable because Trust was a

---

[21] "Eligible tenant buyer" is defined in Civil Code § 2924m(a)(2) and is multi-factored.

[22] An "eligible bidder" is broadly defined to include eligible tenant buyers, prospective owner-occupants, and certain types of nonprofit associations, nonprofit corporations, cooperative corporations, limited partnerships, limited liability companies, community land trusts, and limited-equity housing cooperatives, as well as the state, the Regents of the University of California, a county, city, district, public authority, or public agency, and any other political subdivision or public corporation in the state. Civil Code § 2924m(a)(3).

[23] The required components of any such bid or notice of intent to bid are detailed in Civil Code § 2924m(c)(2)(A)-(D).

[24] Civil Code § 2924m(c)(3) allows all eligible tenant buyers acting together to submit a bid, in an amount equal to the highest bid at auction, and be deemed the last and highest bid immediately upon the submission of their bid. Paragraph (4) allows any eligible bidder to submit an overbid, with the highest overbid received at the conclusion of the 45-day period deemed the last and highest bidder pursuant to the power of sale.

23

prospective owner-occupant under Civil Code § 2924m(c)(1) through Edward. Edward, through his attorney, pushed Quality to issue the Sale Deed on that basis, and the prospective owner-occupant path under Civil Code § 2924m(c)(1) and the overbid paths under Civil Code § 2924m(c)(2)-(4) are mutually exclusive. From Debtor's perspective, the potential overbid procedures do not apply because they were not timely conducted.[25] Quality acknowledged both bases in its correspondence with Edward's counsel. Prospective overbidders were turned away because: (1) the prospective owner-occupant status had been invoked, and (2) the intervening bankruptcy filing by Debtor "prevented Quality from accepting [notices of intent to bid] from eligible bidders."[26] This leaves the Panel with only one legal issue to decide—was the Foreclosure Sale "deemed final" under the "prospective owner-occupant" provisions of Civil Code § 2924m(c)(1)?

---

[25] *See also Spikes*, 662 B.R. at 704 ("Noncompliance with the [overbid] regime blocks finality indefinitely and leaves title with the trustor.").

[26] As reflected in its correspondence with Mr. Prince, Quality was concerned with the automatic stay imposed on the Petition Date. The hearing on the Motion for Relief from Stay did not occur until August 17, 2023—more than two weeks after the initial 15-day overbid window would have closed. Even though the Stay Order ultimately annulled the automatic stay, the potential overbid process had already been abandoned before the stay hearing. Relief from stay could have been sought on an expedited basis to try to preserve the overbid process—if that was the route to deemed finality the parties wanted to pursue—but that did not happen.

**5.    How Prospective Owner-Occupant Status is Determined**

Edward, on behalf of Trust, contends the Foreclosure Sale was "deemed final" under Civil Code § 2924m(c)(1) when Quality "accepted" the Affidavit.[27] Edward cites *Hager* for the proposition that "[u]nder Civil Code § 2924m(c), if a foreclosure sale of a real property containing 1-4 residential units is completed and the prevailing bidder is a prospective owner-occupant as defined in Civil Code § 2924(m)(a)(1), then the sale is final, and that person will immediately take title to the property." *Hager*, 651 B.R. at 882.[28] Edward then asserts: "Quality acknowledged both receipt

---

[27] Section 2924m(c) provides, in pertinent part, as follows:

A trustee's sale of property under a power of sale contained in a deed of trust or mortgage on real property containing one to four residential units pursuant to Section 2924g shall not be deemed final until the earliest of the following:

(1)    If a prospective owner-occupant is the last and highest bidder at the trustee's sale, the date upon which the conditions set forth in Section 2924h for the sale to become final are met. The prospective owner-occupant shall submit to the trustee the affidavit or declaration described in paragraph (1) of subdivision (a) at the trustee's sale or to the trustee by 5 p.m. on the next business day following the trustee's sale.

Civil Code § 2924h, in turn, outlines the potential bid procedures for a nonjudicial foreclosure sale, including the remittance of funds.

[28] The use of "immediately" in this quoted language was made in the context of contrasting the provisions of Civil Code § 2924m(c)(1), which apply when the prevailing bidder is a prospective owner-occupant, to the provisions of Civil Code § 2924m(c)(2)-(4), which apply if the prevailing bidder is not a prospective owner-occupant and a longer overbid period is triggered. *See Hager*, 651 B.R. at 882-883. Unlike the facts presented here, there was no claimed "prospective owner-occupant" in *Hager*. *Hager*, instead, involved the postpetition recordation of a Sale Deed in favor of an

and sufficiency of the Affidavit, and at that time confirmed that Edward was eligible to take title as an owner-occupant pursuant to § 2924m."[29] Taking these two propositions together, Edward concludes it was clear error for the bankruptcy court not to rule in Trust's favor. In other words, if Quality accepted the Affidavit, the Foreclosure Sale was immediately final and neither Quality (as argued before the bankruptcy court) nor the bankruptcy court (as argued before this Panel) could second-guess the finality of the Foreclosure Sale. Edward further argues that "setting aside Quality's determination of the [A]ffidavit's adequacy" undermines the legislative purpose of Civil Code § 2924m to provide a "speedy remedy for owner-occupant to obtain title."

While Edward correctly notes that Civil Code § 2924m(d)[30] allows a foreclosing trustee to rely upon the attestations in the affidavit of a

---

investor, recorded 22 days after the trustee's sale and the day after the debtor filed her bankruptcy petition.

[29] Debtor disputes that Quality "accepted" the Affidavit or otherwise determined Edward satisfied the prospective owner-occupant requirements of Civil Code § 2924m.

[30] Civil Code § 2924m(d) provides:

The trustee may reasonably rely on affidavits and declarations regarding bidder eligibility received under this section. The affidavit or declaration of the winning bidder shall be attached as an exhibit to the trustee's deed and recorded. If the winning bidder is not required to submit an affidavit or declaration pursuant to this section, the trustee shall attach as an exhibit to the trustee's deed a statement that no affidavit or declaration is required by this section, and the lack of an affidavit or declaration shall not prevent the deed from being recorded and shall not invalidate the transfer of title pursuant to the trustee's deed.

prospective owner-occupant, that does not mean the foreclosing trustee has no discretion in its review of the affidavit. *See Moeller*, 25 Cal. App. 4th at 832 ("[I]f there is a defect in the procedure which is discovered after the bid is accepted, but prior to delivery of the [Sale Deed], the trustee may abort a sale to a bona fide purchaser, return the purchase price and restart the foreclosure process."). Nor does it mean the bankruptcy court was precluded from reviewing such a determination if it had been made. *See Spikes*, 662 B.R. at 708 (noting a "sale would be void" if the declaration in a Sale Deed was found to be inaccurate).

The fundamental problem with Edward's argument, however, is that the evidence presented, even viewed in the light most favorable to Edward, clearly demonstrates that Quality did not accept the Affidavit. Quality flagged multiple problems with the Affidavit on several occasions, and made efforts to follow-up, before it ultimately rescinded the Foreclosure Sale. Quality appears to have used its best efforts, over a roughly two-month period, to work with Mr. Prince to try to resolve the problems. Quality repeatedly asked for, but did not receive, a copy of the trust agreement—despite apparent representations by Edward to Quality that the trust agreement would resolve the prospective owner-occupant issue.[31]

---

[31] The correspondence submitted in support of Debtor's motion for summary judgment reflects that Edward represented to Quality that Trust was a testamentary trust. A testamentary trust does not become effective and transfer property until the death of the settlor. *See* Cal. Probate Code § 15200 (outlining the different methods of creating a trust under California law). If Trust was a testamentary trust created by

There is no evidence that Quality determined the Affidavit satisfied the requirements of Civil Code § 2929m(c)(1). To the contrary, Quality determined it was "unable to confirm" that Trust qualified as a prospective owner-occupant and, on that basis, refused to issue a Sale Deed.

### 6. Evidence Against Prospective Owner-Occupant Status

Edward also argues the bankruptcy court erroneously determined that he cannot be a prospective owner-occupant under Civil Code § 2929m.[32] Edward cites *Presta v. Tepper*, 179 Cal. App. 4th 909, 914 (2009), for the proposition that "a trust is merely a legal instrument executed and maintained by individuals, and is not a separate entity with its own status." The Panel agrees that California treats a trust as a fiduciary relationship, not a legal entity. *Moeller v. Superior Ct.*, 16 Cal. 4th 1124, 1132 n.3 (1997); *see also Boshernitsan*, 61 Cal. App. 5th at 891 ("Unlike a corporation, a trust is not a legal entity."). "Legal title to property owned by a trust is held by the trustee, and common law viewed the trustee as the

---

Edward, then CIC would not become the trustee by the terms of the trust agreement until Edward's death. Therefore, Edward, as settlor of the testamentary trust, would still own and control the property subject to such trust until his death. In this capacity, Edward might qualify as a prospective owner-occupant. This appears to be the attempted explanation provided by Edward to Quality as to why Edward personally was the intended titleholder, notwithstanding the directions in the Receipt of Funds and the Affidavit that the Sale Deed be vested in the name of "The Stephen Edward Trust UDT 7-19-2023, CIC as trustee."

[32] The Order did not find Edward cannot qualify as a prospective owner-occupant. Rather, the Order held "Stephen Edward Trust UDT 7-19-2023, CIC Trustee does not satisfy the requirements under *Boshernitsan* for being deemed a 'natural person' under [Civil Code] § 2924m(a)(1)."

owner of the trust's property." *Galdjie v. Darwish*, 113 Cal. App. 4th 1331, 1343 (2003).

Depending, therefore, upon who is acting as the trustee, actions taken in the name of trust may qualify as actions of a "natural person." *See Aulisio v. Bancroft*, 230 Cal. App. 4th 1516, 1524 (2014) (holding a trustee who was both the settlor and beneficiary of revocable trust could appear in an action in pro per); *Boshernitsan*, 61 Cal. App. 5th at 894 (holding a trustee who was both the settlor and beneficiary of a revocable trust qualified as a "natural person" landlord under San Francisco eviction ordinance).[33] In both the *Presta* case cited by Edward and the *Boshernitsan* case cited by the bankruptcy court in the Tentative Ruling, the trustee of the revocable trust at issue was a natural person. In *Boshernitsan* and *Aulisio*, the trustee was also acting as the settlor, trustee, and beneficiary of a revocable trust. In such circumstances, the trustee is in the unique position of "not representing the interests of others. The interest he represents is his own." *Aulisio*, 230 Cal. App. 4th at 1524.

Edward's argument that he, as an individual, qualifies as a prospective owner-occupant depends on Edward representing his own

---

[33] In addition to testamentary trusts, California law allows property to be transferred to a trust during a settlor's lifetime. Such a trust is commonly known as a living or inter vivos trust. Unless the trust instrument expressly provides the trust is irrevocable, a trust is revocable at any time by the settlor. *See* Cal. Probate Code § 15400. The settlor of a living trust may also be the trustee and/or beneficiary of the trust. *See* Cal. Probate Code §§ 15200 and 15304.

interests, through Trust, at the time of the Foreclosure Sale. Those circumstances may have existed here if (1) Trust was a testamentary trust or (2) Trust was a revocable trust with Edward acting as the settlor, trustee, and beneficiary.[34] The undisputed facts in the record contradict both possibilities. The Affidavit represents, under oath, that "CIC" was the trustee of Trust at the time of the Foreclosure Sale, not Edward. Edward provides no explanation as to why "CIC Trustee" was named as the trustee of Trust in both the Receipt of Funds and the Affidavit or how, as a matter of law, the Panel may disregard such very specific designations as merely "ministerial."

Edward's assertion that he was the "intended" titleholder does not remedy the deficiency of the Affidavit. The recent case of *Applegate v. Carrington Foreclosure Services, LLC*, 112 Cal. App. 5th 356 (2025), is instructive. *Applegate* arose from a nonjudicial foreclosure sale of a single-family residence. *Id.* at 361. At the public auction, the foreclosing lender bid $100 and was declared the winning bidder. *Id.* at 362. However, the trustee cancelled and unwound the sale six days later. *Id.* Eleven days after the public auction, Connor Applegate submitted a notice of intent to bid to the

---

[34] These are the two possible factual scenarios raised in this case. The testamentary trust argument was raised in Edward's correspondence with Quality. The combined settlor, trustee, and beneficiary scenario was raised by the bankruptcy court in the Tentative Ruling. There may be other circumstances—not before or considered by this Panel—under which an individual, acting through a trust, might qualify as a prospective owner-occupant under Civil Code § 2924m.

trustee and subsequently followed up with a bid and a cashier's check in the amount of $575,000. *Id.* Mr. Applegate did not, however, submit an affidavit or declaration satisfying every requirement of Civil Code § 2924m(a)(1).[35] The trustee returned the funds and advised there would "be no post-auction bid process." *Id.* Roughly nine months after the first auction, the trustee conducted another public auction, and the lender was the winning bidder with bid of $2,301,746.98. *Id.* at 363. Mr. Applegate then sued the trustee and lender alleging the trustee wrongfully rejected his bid. *Id.* The trial court granted summary judgment in favor of the trustee and lender.[36] On appeal, Mr. Applegate argued he "'substantially complied' with the statute and his notice 'clearly communicated his status as a prospective owner-occupant and his intent to bid, fulfilling the core purpose of [Civil Code] section 2924m's notice requirements.'" *Id.* at 366. The Court of Appeal rejected this argument and found that substantial compliance was insufficient. *Id.* at 366-67.

As in *Applegate*, the Affidavit fails to satisfy delineated requirements of Civil Code § 2924m(a)(1). Here, the Affidavit fails to establish that the

---

[35] The specific deficiencies noted as to Mr. Applegate's notice were that it did not address the requirements of Civil Code § 2924m(a)(1)(C)(iii)-(iv). *Applegate*, 112 Cal. App. 5th at 362, n. 4.

[36] The trial court found and the Court of Appeal affirmed: (1) there is no private right of action under Civil Code § 2924m; (2) the foreclosure sale was unwound, as allowed by statute and within the trustee's discretion, before it became a final sale; and (3) Mr. Applegate failed to submit a bid meeting the statutory requirements. *Applegate*, 112 Cal. App. 5th at 362, 370.

highest bidder at the Foreclosure Sale was (1) a "natural person" and (2) "not acting as the agent of any other person or entity in purchasing the real property." Through the Tentative Ruling, the bankruptcy court gave Edward the opportunity to support his contention that Trust qualified as a natural person. However, the record reflects that Edward declined the opportunity to supplement the record on this issue. As to the second deficiency, Edward's argument is Trust *was* bidding for him personally. While *Applegate* viewed the prospective owner-occupant requirements from the perspective of the overbid procedures of Civil Code § 2924m(c)(2), the requirements for prospective owner-occupant status are the same under Civil Code § 2924m(c)(1). If any one of the requirements of Civil Code § 2924m(a)(1) is not addressed by the affidavit, then the bidder "has not demonstrated eligibility to bid **_under_** the statute" as a prospective owner-occupant. *Id.* at 367 (emphasis in original). Because the Affidavit failed to establish all the requirements, neither Trust nor Edward personally qualified as a prospective owner-occupant under Civil Code § 2924m(c)(1). Therefore, the Foreclosure Sale was not "deemed final", and the bankruptcy court did not err in its entry of the Judgment.

**B.    The bankruptcy court did not abuse its discretion in granting injunctive relief against Trust.**

Edward, as trustee of Trust, also contests a portion of the injunctive relief granted as part of the Judgment—specifically its prohibition against "contacting in any manner, both orally or in writing, tenants of the

[Property]." Edward argues this provision "amounts to a prior restraint—a judicial order that forbids speech before it occurs—and is presumptively unconstitutional under the First Amendment." Edward asserts, "A mere concern about potential interference with tenancy does not rise to the level required to silence speech, particularly where less restrictive means—such as enjoining rent collections efforts or preventing the appellant from altering or damaging the property—were already considered and imposed."

"The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 546 n. 12 (1987)).

> [A] party seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1005 (9th Cir. 2023) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)); *accord Velo Holdings Inc. v. Paymentech, LLC (In re Velo Holdings Inc.)*, 475 B.R. 367, 378 (Bankr. S.D.N.Y. 2012).

We agree with Debtor that Trust's contact with the two tenants is much more than the "potential interference" Edward suggests. The record reflects that Trust's representatives continued to contact the tenants despite: (1) rescission of the Foreclosure Sale by Quality; (2) a cease-and-desist letter from Debtor's counsel; (3) an express request from a tenant to "[p]lease stop sending me these"; (4) an unequivocal joinder by the chapter 13 trustee to the Sanctions Motion denouncing Trust's actions toward the tenants; and (5) entry of the Plan Confirmation Order.

Trust's continued contact with the Property's two tenants, as reflected in the exhibits submitted by Debtor in support of his motion for summary judgment, satisfies each of the factors for issuance of a permanent injunction and supports the inclusion of a prohibition of contact with the tenants. The bankruptcy court did not, therefore, abuse its discretion by including this provision in the permanent injunction issued through the Judgment.

## CONCLUSION

For the foregoing reasons, we AFFIRM.